UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 3:14cr-00215 (JAM) |
| V. | : | |
| PAUL PERROTTI | : | November 23th, 2015 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO RECONSIDER DEFENDANT'S MOTION FOR NEW TRIAL PURSUANT TO FEDERAL RULE 33**

Pursuant to Rule 7(c)(1) of the Local Rules Of Criminal Procedure for District of Connecticut, the Defendant, PAUL PERROTTI, respectfully urges this court to reconsider its denial of Defendant's Motion for New Trial Pursuant to Rule 33.

## STANDARD

Under Rule 33, "[this Court] must be satisfied that competent, satisfactory and sufficient evidence in the record support the jury verdict" and [this Court] may set aside a jury's decision if the verdict was against the weight of the evidence, weighing for itself inconsistencies in testimony and witness credibility." *United States v. Ferguson, 246, F.3d 129, 134 (2d.Cir. 2001); United States v. Sanchez, 969 F.2d 1409, 1413 (2d. Cir. 1993).*

The jury instructions defined Element Three – Wrongful Taking of Property or Money as: "[T]o obtain by fraud means to intentionally take something by false representations, suppression of the truth, or deliberate disregard for the truth, usually for the purpose of causing a financial loss to someone else or bringing about financial gain to oneself or another." *See Jury Instr. P. 7.* The jury instruction further defines to Obtain by Fraud as: "To intentionally take something by false representations, suppression of the truth, or deliberate disregard for the truth, usually for the purpose of causing financial loss to someone else or bringing about a financial gain to oneself or another." *Id.*

In your Order Denying Post-Trial Motions (hereinafter "Order"), your honor ostensibly agrees with the defense that there was meek and highly circumstantial evidence to connect any electrical supplies ordered by the Town to any electrical supplies utilized for PPE-purposes. *See Order P. 9.* In fact, you aver that it was proper for the jury to infer only "several hundred dollars of electrical supplies were misapplied", however that is the standard for the Rule 29a motion. *Id.* To the contrary, under Rule 33, the Court has the duty to examine the evidence and weigh credibility of witnesses for itself. As noted in the Court's order: "Even acknowledging that I have somewhat more discretion in the Rule 33 context to overturn a jury's verdict, I decline to exercise that discretion here." *See Order P. 13.* We respectfully urge the Court to exercise its discretion and re-examine the dearth of evidence supporting the total amount of money related to the electrical supplies as well as the below-referenced alleged fraudulent transactions. We submit, based on this analysis, this Court should conclude that there were zero dollars' worth of electrical supplies were intentionally misapplied by Mr. Perrotti. Additionally, despite the fact our arguments were articulated in the original motion, I would like to re-address them in the instant motion to highlight the merits of our position.

**ARGUMENT**

The crux of this motion to reconsider lies not in the electrical supply invoices, but rather the other allegedly fraudulent payments, namely payments to Andrew Ubaldi, Max Biggins, Astro Electric, and the $2,000 and $1,450 transactions. We submit that there is no satisfactory, sufficient or competent evidence in the record to support the contention that the $5,000 statutory threshold has been met and thus cannot support a conviction under 18 U.S.C. 666(a)(1)(A).

Before addressing specific transactions, I want to highlight the testimony of Connie Brunswick, the financial assistant to the Town. *See generally testimony of Connie Brunswick.* She testified that she would receive invoices from the MVFD (submitted by Mr. Perrotti) for approval and described the multi-tiered approval process involving the board of selectman and the treasurer. *Id.* She testified that Mr. Perrotti always submitted invoices from the MVFD through the proper channels and never attempted to

circumvent the system. *Id.* Thus, every invoice or payment submitted to the Town by Mr. Perrotti cannot be said to be misleading, made with false representations or with reckless disregard for the truth. If any of the Town officials didn't think an invoice was legitimate, or there was a conflict of interest, they simply didn't have to pay it. On top of that, the First Selectman inherently has the authority to waive any conflict of interest provision set out in the Town Charter, which he did.

**1. $900 Astro Electric**

The prosecution argued to the jury that Mr. Perrotti obtained a $900 payment by disguising the fact he was doing the work as a subcontractor to Astro Electric and was thus fraudulent. However, during its investigation, the FBI interviewed the First Selectman (the highest ranking official of Middlebury), who signed a sworn statement that he signed off on the relevant invoice, saw Mr. Perrotti doing the work, and knew he was acting as a subcontractor to Astro. *See Exhibit "A" attached hereto.* This signed statement is irrefutable evidence that Mr. Perrotti was not intentionally misleading the Town and first sought the approval of St. John prior to commencing work.[1] Since there was full disclosure and no misleading behavior involved with this transaction whatsoever, any notion of fraudulent conduct should not be considered. As a result, this payment cannot be considered toward the $5,000 statutory threshold.

Additionally, we submit, that attorney Karwan's argument to the jury that this payment was fraudulent was not made in good faith as she argued it was doubtful that the work was even done; contrary to information in her possession. This particular instance, in conjunction with other below-references instances, has led to a miscarriage of justice.

[1] We further submit that this signed statement by St. John, that Mr. Perrotti obtained his consent, could support an inference that any work done by Mr. Perrotti at the MVFD was done with Mr. St. John's consent.

**2. $2,000 check to Mr. Perrotti for fire fighter training**

The prosecution alleges that Mr. Perrotti fraudulently obtained a $2,000 payment that he disguised as fire fighter training payments. However, there is no evidence in the record to satisfy this Court that there is competent, satisfactory and sufficient evidence to support this contention. In fact, there was no evidence whatsoever so show Mr. Perrotti utilized false representations, suppression of the truth, or deliberate disregard for the truth to personally benefit from this transaction. The Government, with its vast resources, interviewed dozens of witnesses during its investigation, yet did not locate one instructor who did not get paid or produce any evidence that this money went anywhere other than to said instructors. If the prosecution claims this payment was fraudulent, and the instructors were never paid, they should have been able to locate at least one instructor and had them testify to that effect. We submit that no unpaid instructors testified because they don't exist. Moreover, there was no evidence presented that there was any lack of training at the MVFD which corroborates the fact that training took place which warranted paid instructors. This $2,000 reimbursement from the Town even had "FF1 Instructors Pay" listed on the memo of the check, was signed by the treasurer of the MVFD, Greg Perrin and submitted to the Town, through the proper channels for reimbursement. *See Gov't Ex. 46A.* The prosecution - at the very least - could have called Mr. Perrin to testify if this payment was fraudulent.[2]

Paying instructors in cash is not fraudulent or misleading. It is not the defense's burden to show the money was spent to pay instructors. It is the Government's burden to prove beyond a reasonable doubt that this money was not, in fact, used to pay instructors. No evidence whatsoever supports the notion that this money was stolen or embezzled by Mr. Perrotti. As such, to the extent the prosecution claims this payment was fraudulent, they have not provided any competent, satisfactory or sufficient

[2] Indeed, the Government interviewed Mr. Perrin prior to trial as evident by a signed sworn statement by him received by the defense prior to trial. Inexplicably, Mr. Perrin was not called to testify regarding any fraudulent behavior by Mr. Perrotti. Neither was the Town treasurer, Larry Hutvagner, or the First Selectman, Mr. St John, even though all were interviewed prior to trial.

evidence to support that contention and accordingly should not be considered towards the $5,000 statutory threshold.

**3. $1,450 Payment for Roof Work**

The prosecution further alleges Mr. Perrotti utilized a made-up invoice for roof repair which disguised the fact he was the ultimate beneficiary of the Town payment. This is another example of the Government alleging fraudulent behavior without any substantive proof. They did not produce any evidence that the roof project was not completed or that Mr. Perrotti didn't do it. To the contrary, the defense introduced pictures of the roof and the wires that needed to be disconnected, moved and reconnected.

The roof replacement project went out to bid and was awarded to the lowest bidder. When the contractor showed up to begin the work he alerted Mr. Perrotti that he needed an electrician to remove the wires before the removal process could begin. Mr. Perrotti informed Mr. St. John of this, obtained his approval (Mr. St. John said "just do it") and did the job. The bottom line is that there was an emergency situation that needed to be handled immediately and Mr. Perrotti did it - there was no evidence to the contrary. Prosecution could have easily had Mr. St. John testify that he did not authorize this work or that the work wasn't done, yet never did. That would have been strong evidence that this payment was fraudulent. Again, we can't stress enough it is not the defense's burden to show this payment was not fraudulent. After reconsidering this payment and the lack of evidence supporting its fraudulent nature, this Court should not include this payment towards the $5,000 statutory threshold as there is insufficient evidence in the record to support this allegation.

**4. Max Biggins**

The prosecution also argued to the jury that Max Biggins received a total of $3,100 in fraudulent payments. However, during its investigation, the FBI interviewed Mr. Biggins who signed a sworn statement (302) stating that 60% - 70% of the work in which he received payment stemmed from

legitimate work he completed at the MVFD. *See Def. Ex. C.* Nonetheless, again, the prosecution argued to the jury that all the payments he received from the Town were fraudulent. A key consideration here is that the prosecution presented two witnesses who contradicted each other regarding junior fire fighters receiving payment for work done at the MVFD.[3] *See Testimony of Kim Connors; see also Testimony of Tony Bruno*. This is important because Mr. Biggins testified that he did do work at the MVFD and was paid for it. Thus, the full amount tendered to him through the Town should not be held against Mr. Perrotti. We respectfully urge this Court to re-examine the credibility of the witness and evidentiary strength of his testimony.

First, under oath, he states that 60% - 70% of the work he did was legitimate work done at the MVFD. *See Def. Ex. C.* Conversely, on the witness stand, he conveniently testified that all the payments he received were for work done at PPE and was not paid for work done at the MVFD. The obvious conclusion here is that he was either lying during his initial interview or lying on the stand (more likely the latter after being prepped to testify). Under Rule 33, it is this Court's duty to weigh the credibility of this witness to arrive at a reasonable conclusion as to how much money was actually paid to him for work done at PPE.[4] The defense does not concede $3,100 was fraudulently paid to Mr. Biggins, we simply suggested that based on his testimony, and not his prior inconsistent statement, a jury could have inferred the whole amount was fraudulent.

Mr. Perrotti's testimony also corroborates this contention as he admitted there was sometimes "overlap" where he would pay Mr. Biggins for a full day's work at PPE even though Mr. Biggins would spend a couple hours responding to fire calls.[5] On the other hand, Mr. Biggins would sometimes be paid for working at the MVFD while Mr. Perrotti would ask for his assistance on a PPE job site. They key here is that the payments went both ways. PPE would sometimes pay Mr. Biggins while he was

---

[3] Connors testified that juniors got paid and Perrotti made sure they worked for it and Bruno testified juniors don't get paid at all.

[4] 70% of $3,100 is $2,170, leaving $930 as the amount of money he initially admitted receiving for working for PPE.

[5] Agent Vientos testified regarding this overlap based on a pre-indictment statement made by Mr. Perrotti, without counsel, to Agent Vientos. *See Testimony Agent Vientos During Gov't Case In Chief.*

responding to a fire call and sometimes the Town would issue Mr. Biggins a check that inevitably included some work done for PPE.

a. The Court articulated, through its Order, that Mr. Perrotti had a "less than innocent mind" regarding the secretly recorded audio tape. *See Order P. 5.* We submit that Mr. Perrotti's comments should not be held against him in that manner. Mr. Perrotti testified that he was extremely excited and nervous during that time and was not even sure what was going on. The comments referred to by the Court relate to Mr. Biggin's residence, as well as another junior fire fighter, Brian Shaban. In any event, it is important to note that Mr. Perrotti did not know he was being recorded yet tells Mr. Biggins to just "tell the truth" at the end of the conversation which does not support the notion he had a less than innocent mind.

In sum, we submit, and urge this Court to agree, the testimony of Mr. Biggins adduced at trial was patently incredible or defies physical realities, as prohibited in *United States v. McCourty* and therefore the full $3,100 should not be considered towards the $5,000 statutory threshold. 562 F.3d 458, 475-76 (2d Cir. 2009).

**5. Andrew Ubaldi**

The prosecution also called Andrew Ubaldi, another junior fire fighter, to the witness stand to testify regarding checks he received from the Town for work either done at the MVFD or PPE. His testimony presents a very similar situation as Mr. Biggins. Again, this situation also involves the previously discussed "overlap" between work at the MVFD and Mr. Ubaldi was unable to put a precise amount at to what he received for PPE or the MVFD. The prosecution alleges Mr. Ubaldi wrongfully received $2,735 in 2012 and $248 in 2013. We submit the actual amount that should be counted towards the $5,000 threshold is much lower, if anything.

In any event, we urge the court to revisit Mr. Ubaldi's testimony and arrive at an appropriate conclusion as to how much money Mr. Ubaldi was paid (by the Town) for PPE purposes versus the amount he was paid by the Town for work done at the MVFD. On this note, it is important to remember the conflicting testimony of Prosecution witnesses regarding whether or not junior fire fighters could be paid for work completed at the MVFD and the testimony regarding overlap. *See testimony of Kim Connors and Tony Bruno.*

**6. 2012 Invoices**

Another issue raised by the prosecution during trial, and in your Order, was the fact that the prosecution could not obtain any PPE records for the year 2012. Attached hereto as "Exhibit B" is an affidavit from our private investigator, John Mucherino, who provided the records to Agent Waterman pursuant to the search warrant. *See "Exhibit B" attached hereto.* Neither Agent Waterman, Agent Vientos, nor AUSA Karan ever contacted Mr. Mucherino or our office to inform us that there were missing records. Moreover, prior to his indictment, the FBI executed a search and seizure warrant at the MVFD which included Mr. Perrotti's office, and therefore it would be impossible for us to know what the Government had and what they didn't have. This (lack of) information was unknown to the defense until it was brought up during trial when the prosecution insinuated to the jury that Mr. Perrotti, or his defense team, was somehow uncooperative or misleading by not providing records. Indeed, your honor agrees as evident in Footnote 4 of your Order: "the jury could well have concluded that PPE's failure to produce complete records was for fear of disclosing incriminating information." To the contrary, the prosecution was the misleading party as they never informed the defense of the lack of records and that they were somehow prejudiced in their prosecution. To the extent that the Government claims the defense was either noncompliant or hiding something, they could have easily contacted Mr. Mucherino or Attorney Minnella to attempt to resolve this issue, yet never did. Thus, the Government's lack of diligence undoubtedly and unfairly prejudiced Mr. Perrotti by wrongfully attacking his credibility. This is yet another factor that has led to the wrongful conviction of an innocent person and a manifest injustice.

**7. Miscarriage of justice.**

For the above-mentioned reasons, based on the totality of the circumstances, we believe there has been a miscarriage of justice that has resulted in the conviction of an innocent man. In support of this contention we offer the fact that Attorney Karwan ignored the sworn statement obtained by the FBI during their investigation that the Astro Electric job might not have even been done never mind approved. Her argument to the jury was not made in good faith as it was clearly contrary to the information available to her. The same goes for her argument to the jury that the total amount of money paid to Max Biggins from the Town was wrongfully received for work done at PPE.

Moreover, please note the inexplicable lack of essential witnesses that should have been called by the prosecution. The only logical explanation for this lack of critical testimony was that the prosecution was afraid of exculpatory testimony. Instead of having these witnesses testify, and risk them divulging any lack of fraudulent behavior, the prosecution just threw out these payments ($2,000 and $1,450) and hoped the jury would infer they were fraudulent based on a conflict of interest theory, which they did. With no other evidence that these payments were fraudulent in nature, a miscarriage of justice would result if this Court were to also conclude these payments were fraudulent, thus holding that the $5,000 statutory threshold has been met and letting this conviction stand. Therefore, based on the totality of the circumstances, we submit that there has been a miscarriage of justice and a new trial is warranted.

## CONCLUSION

For the aforementioned reasons we submit this Court should grant our Motion for a new Trial Pursuant to Rule 33 as the verdict was against the weight of the evidence and the manifest injustice that has resulted in the conviction of an innocent man.

**WHEREFORE**, the defendant, PAUL PERROTTI, respectfully requests this Honorable Court to grant the DEFENDANT'S MOTION TO RECONSIDER ITS DENIAL OF THE DEFENSES RULE 33MOTION FOR A NEW TRIAL.

THE DEFENDANT, PAUL PERROTTI

By: /s/federal bar # CT038195
Martin Minnella
Minnella, Tramuta & Edwards LLC
530 Middlebury Road
Middlebury, CT 06762
Phone No. (203) 573-1411
Facsimile No.: (203) 757-9313
Email Address: johannas@mtelawfirm.com
Federal Bar No.: ct038195

**ORDER**

The foregoing motion having been heard is hereby:

GRANTED / DENIED

______________________________

Judge / Clerk

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | NO. 3:14cr-00215-(JAM) |
| | : | |
| PAUL PEROTTI | : | November 23, 2015 |

**CERTIFICATE OF SERVICE**

I, Martin Minnella, hereby certify that on November 23, 2015, a copy of the foregoing DEFENDANT'S MOTION TO RECONSIDER PURSUANT TO RULE 33 FOR A NEW TRIAL was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Bar #CT038195

Martin Minnella
Federal Bar No.: CT038195

# EXHIBIT "A"

FD-302 (Rev. 5-8-10)





**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 06/23/2015

**LAW ENFORCEMENT SENSITIVE**

This information is the property of the FBI and may be distributed to state, tribal, or local government law enforcement officials with a need-to-know. Further distribution without FBI authorization is prohibited. Precautions should be taken to ensure this information is stored and/or destroyed in a manner that precludes unauthorized access.

On June 18, 2015, Special Agents (SAs) Jeffrey D. Waterman and Melissa Vientos interviewed Town of Middlebury First Selectman Edward St. John at the Middlebury Town Hall, located at 1212 Whittemore Road, Middlebury, Connecticut (CT). St. John provided the following information:

At the outset of the interview, St. John provided copies of records related to the 2006 FEMA grant received directly by the Middlebury Volunteer Fire Department (MVFD). Those records are digitally attached hereto.

St. John was shown invoices which were Bates stamped 3136 and 1528. Regarding invoice 3136, which was submitted by Astro Electric for heat tape installation, St. John knew the work was completed because he saw Paul Perrotti completing the installation. Perrotti may have also had a tall man named Nate (last name unknown - LNU) assisting him. St. John did not know why he signed both invoices, but noted the 3136 invoice was generated at a time when he was resuming the office of First Selectman. He added that the invoice was dated at a time when he was not the First Selectman, but he signed off on it after he had resumed the position. St. John did not know why the 3136 invoice was paid out of the CNRF account.

St. John believed Perrotti was working for Astro at the time because it would have been a conflict for Paul Perrotti Electric (PPE) to do the work. St. John did not believe the heat tape worked any longer after the difficult winter the region experienced.

Regarding invoice 1528, St. John recalled it was related to the new roof

Investigation on 06/18/2015 at Middlebury, Connecticut, United States (In Person)

File # 194B-NH-3002182 Date drafted 06/23/2015

by WATERMAN JEFFREY D, VIENTOS MELISSA

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

194B-NH-3002182

Continuation of FD-302 of Interview of Edward St. John on 6-18-15, On 06/18/2015, Page 2 of 2

installed on the MVFD and an electrical issue with the antennas on the roof. St. John did not know why he signed the invoice, but he occasionally signed off on invoices. St. John did not recall Perrotti asking him to sign either of the invoices.

# EXHIBIT "B"

**AFFIDAVIT**

I, JOHN MUCHERINO, duly sworn, depose and say:

- I was in law enforcement for over thirty-eight and a half (38.5) years as a State Trooper here in Connecticut and held various leadership positions throughout my career.
- I am a private investigator who was hired by Mr. Perrotti.
- I acted as a liaison between Mr. Perrotti and the FBI during their investigation and turned over various documents to Agent Waterman pursuant to their request.
- I was never contacted by the FBI regarding a lack of any documents from 2012.

JOHN MUCHERINO

***SUBSCRIBED AND SWORN TO BEFORE ME THIS*** 17th ***DAY OF*** November ***2015.***

Notary Public

CHERYLYNN D'AMICO
NOTARY PUBLIC
MY COMMISSION EXPIRES
DEC. 31, 2019