UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 3:14cr-00215 (JAM) |
| V. | : | |
| PAUL PERROTTI | : | January 4, 2016 |

## MEMORANDUM OF LAW IN OPPOSITION OF GOVERNMENT'S MEMORANDUM OF LAW IN ANTICPATION OF THE *FATICO* HEARING.

The Defendant, PAUL PERROTTI, respectfully submits this memorandum of law in anticipation of the *Fatico* hearing scheduled for January 28, 2016.

A.   **Legal Standard**

The Defendant ostensibly agrees with the Government's statement of law.  However, the Defendant raises numerous objections as to the sufficiency of the evidence regarding allegations in Governments' Memorandum of Law in Anticipation of the *Fatico* hearing.

B.   **Objections to Dollar Amounts**

1.   Defendant's **first objection** is to the total loss amount of $121,394.96.  Any reasonably calculated loss, by a preponderance of evidence, should result in a drastically lower total loss amount, if any.  As such, Defendant leaves the Government to its proof at the *Fatico* hearing to substantiate this amount and to the Court to make a reasonable calculation of any alleged loss based on evidence already presented at trial and evidence to be presented at the *Fatico* hearing.

2.   Defendant's **second objection** stems from the total amount of electrical supplies allegedly misplaced by Mr. Perrotti.  The Government alleges a $25,590.84 loss from the MVFD and an $11,489.66 loss from the Town.  The issue of electrical supplies was

thoroughly examined during trial and the Defendant maintains that no electrical supplies were misappropriated.[1]  The nonsensical equation utilized by the Government (comparing the average amount of electrical supplies purchased for other Town buildings) is so highly circumstantial that this Court should not consider it to arrive at a reasonable calculation of any monetary loss relating to electrical supplies.

3.      Defendant's **third objection** stems from the alleged total loss derived from the MVFD debit card.  The Government alleges that Mr. Perrotti wrongfully obtained $13,827.29 via various debit-card-related mediums. *See Gov't Ex. 305.*  The Defendant anticipates testimony from a representative of the MVFD that Mr. Perrotti was not the only member of the MVFD to use said debit card and anytime he did use it, it was authorized. Additionally, the Defense anticipates testimony regarding the MVFD Chief's $200-a-month discretionary allowance as well as specific appropriations authorized by the membership and how this explains some of the relevant debit card expenditures.

4.      Defendant's **Fourth objection** stems from payments received by Mr. Perrotti personally and to his company, PPE, for electrical work completed at the MVFD. *See Gov't Ex. 303.*  In support of this contention, the Government submits that all electrical work at the MVFD was the responsibility of the Town, and therefore any payments received by Mr. Perrotti for electrical work were improper.  The Government further relies on the fact that Mr. Perrotti repeatedly told MVFD members he was donating his time to support their allegation that any payments received by him were unknown to the membership and thus improper.

---

[1] Defendant directs the Court to its Order Denying Post-Trial Motions (Doc. 121) where the Court avers that the jury were free to infer only several hundred dollars' worth of electrical supplies were misappropriated.  Although a lower standard of proof governs the evidence for sentencing purposes, the Defendant submits this lower burden has not been met by the meek evidence supporting the notion of stolen electrical supplies.

While it is true that Mr. Perrotti donated labor to complete scores of electrical jobs at the MVFD throughout his 18 years as Chief, there were jobs which he was paid for, and any such payments were appropriated within the budget and presented to the membership during monthly meetings.[2]  To the extent the Government expects testimony that any payments received by Mr. Perrotti were not approved or authorized, or otherwise transparent to the membership, the Defendant anticipates testimony from an MVFD representative that such payments were, in fact, brought before the members in addition to being authorized by the treasurer.

A key point here is that Mr. Perrotti was the only electrician in the Town that was qualified to complete some of these jobs and, at the end of the day, was just trying to save the Town money by doing the work either for free or at a reduced rate; he never had the criminal intent to defraud the Town or the MVFD.  In fact, he had the opposite intent - to save the Town/MVFD money by doing the work cheaper than other reputable electrical contractors.[3]  As such, the Defendant leaves the Government to its proof regarding any inappropriate payments and the Court to make a reasonable calculation of any alleged loss associated with said payments.

5.     Defendant's **fifth objection** stems from the total amount allegedly paid to junior fire fighters who assisted Mr. Perrotti on PPE jobs.  The Government contends that Mr.

---

[2] The Defendant anticipates testimony that every check made out from the MVFD was not only appropriated under the budget, but also available for inspection during monthly meetings.  The only checks that were hidden from the membership were the checks that Kim Connors wrote out to herself when she used a typewriter to circumvent the QuickBooks system and avoid the checks being exposed during these meetings.  Checks received by Mr. Perrotti from the MVFD were entered into the QuickBooks program, drawn from appropriations within the budget and presented during these meetings.

[3] There are no master electricians on staff at the Middlebury Department of Public works. Indeed, the "Town electrician" Kevin Dawes testified at trial that he was not qualified to complete some of the electrical work that was done by Mr. Perrotti.  Moreover, the Defendant anticipates testimony that since Mr. Perrotti's departure from the MVFD, the Town and/or the MVFD has had to pay outside electrical contractors to complete electrical work, at a higher rate, than Mr. Perrotti customarily charged.

Perrotti wrongfully paid $5,163 to Max Biggins and $2,983.25 to Andrew Ubaldi. Again, this issue was thoroughly addressed during trial and the Defendant submits that the amounts submitted by the Government are not accurate representations of an amount, if any, that was wrongfully received by the aforementioned fire fighters for work done for PPE.[4]

6.      Defendant's **sixth objection** stems from the total amount of money that was allegedly received by Mr. Perrotti through the MVFD. *See Gov't Ex. 301.* These transaction were also thoroughly examined during trial and the Defendant submits that none of them have been proven to be wrongful by a preponderance of the evidence.

## C. Objections to Sentencing Enhancements

### 1. Abuse of Trust Enhancement

The government contends that an abuse of trust enhancement is warranted under U.S.S.G. Section 3B1.3. The defense concedes prong one as Mr. Perrotti undoubtedly held a position of trust as the Fire Chief of the MVFD. However, the Defendant objects to prong two, that he abused his position of trust to commit or conceal his crimes. As a result, the Defendant submits that an abuse of trust enhancement is unwarranted on these grounds.

### 2. Obstruction Enhancement

The Government contends that an obstruction of justice enhancement is warranted under Section 3C1.1 of the Sentencing Guidelines "for a number of reasons because the defendant willfully attempted to obstruct and impede both the investigation and the prosecution of this matter." Perjury is defined for the purposes of the guidelines, as "false testimony concerning material matter with the willful intent to

---

[4] The Defendant directs the Court to his arguments regarding payments to junior fire fighters made in Defendant's Memorandum of Law in Support of Defendant's Rule 29a Motion (Doc. 101) and its Motion to Reconsider (Doc. 126).

provide false testimony, rather than as a result of confusion, mistake or faulty memory." The Supreme

Court has affirmed a trial court's application of section 3C1.1 to increase the defendant's sentence when a

judge believes that a defendant has testified untruthfully. That being said, the Defendant objects to

below-referenced allegations and submits they do not warrant an obstruction enhancement.

**First,** the Government contends that an obstruction enhancement is appropriate because Mr.

Perrotti attempted to unlawfully influence Max Biggins during a secretly recorded conversation. In

support of this contention the Government highlights specific parts of said conversation in which the

Government alleges "Mr. Perrotti repeatedly suggested and implied to Biggins that he should not tell the

FBI the truth about what happened." While the Defendant objects to this interpretation of the

conversation, the Defendant also wants to direct the Court to the part of the conversation where Mr.

Perrotti tells Max "I've never asked you to lie for anybody" and "just tell them the truth and that's it." See

*Gov't Ex. 73T.* Moreover, these statements to Biggins are ambiguous, as some of these comments are

directed towards Mr. Biggins' residence and the residence of a fellow fire fighter, Brian Shaban.

Furthermore, we submit that Biggins, acting under the direction of the FBI, attempted to goad Mr. Perrotti

into incriminating himself by asking him the same question over and over to create the appearance that

Mr. Perrotti was hiding something. Because Mr. Perrotti kept responding with the same answer, the

Government construes this as "coaching" and thus an obstruction of justice. It is also important to

remember that this conversation happened during a time when Mr. Perrotti was excited, confused and he

did not understand the gravity of the situation as he had just learned of the investigation and did not know

that he was a potential target at that time.

**Second,** the Government contends that an obstruction enhancement applies because of Mr.

Perrotti's testimony regarding any alleged employment status of Mr. Biggins and Kim Connors.

Employment status was an important issue in this case, specifically whether or not Mr. Perrotti was a

Town employee. During trial preparation, Mr. Perrotti learned a lot about what it means to have an

employer-employee relationship and how this relationship is viewed by the United States Supreme

Court.[5] Mr. Perrotti did not classify Biggins or Connors as employees during his testimony because he did not believe them to be employees- not because he was intentionally lying. The ironic part about this allegation is that these two alleged employees did not receive W-2's from PPE. It's ironic because the Government (successfully) argued to the jury that Mr. Perrotti was a Town employee because he received a W-2. The Government's argument would hold water if Connors or Biggins received a W-2 from PPE, however they did not.

Additionally, the Government avers that the checks received by Biggins (from the Town, PPE and the MVFD) show consistent, regular payments to him for his PPE work which corroborate their allegation that Mr. Perrotti perjured himself. To the contrary, these checks from the Town, PPE, and MVFD corroborate Mr. Perrotti's story: that most of the time Mr. Biggins was working at the MVFD (where he would receive an MVFD or Town check) and worked at PPE only sometimes when Mr. Perrotti needed help "pulling wire." This notion also corroborates the fact that there was sometimes overlap, when Biggins or Ubaldi would be helping at a PPE job, respond to a fire call, yet still receive a full-day's pay from PPE.

**Third**, the Government contends that an obstruction enhancement applies because Mr. Perrotti "deliberately misled the jury into believing that the work he did at the Fire Department and related sites was work donated by him, when in fact Mr. Perrotti had paid himself for doing this work." The Government further states that it's "clear the defendant lied to the jury when he told them the electrical work completed for the radio enhancement project was done in-house by the Fire Department." However, the Government fails to recall that the water tower job was a two-part job. Mr. Perrotti was hired by Northeast Communications to run wire from the generator in the bunker to the base of the water tower. It was then the Town's responsibility to run the wire up the tower and connect it to the antenna. This is what Mr. Perrotti was trying to explain to the jury. Yes, Mr. Perrotti was paid by Northeast

---

[5] Here, the Defendant is referring to the United States Supreme Court decision in *Nationwide Mut. Ins. Co. v. Darden,* and the (unsuccessful) pre-trial arguments made by the Defendant for the Court to apply the Darden employee test to U.S.C. 666(a)1(A). *503 U.S. 318*

Communications to install a generator in a bunker next to the water tower and run wire to the base of the tower. That had nothing to do with the additional work her performed for the Town, which consisted of him installing conduit and running the wire up the side of the water tower. The electrical supplies purchased by the Town were necessary to complete this second phase of the job and Mr. Perrotti did it free of charge, on a Saturday, as he testified.

The same goes for the Wolcott Fire School, as Mr. Perrotti completed many different jobs there even though the check he received appears to only be payment for one. Since 1994 Mr. Perrotti has been actively involved with the operations at the Wolcott Fire School and has built a great relationship with the directors of the School throughout the years. By donating his time and providing Town-purchased electrical supplies to help renovate the School and complete electrical work, Mr. Perrotti developed this relationship and worked out an arrangement between the Town and Fire School.[6] In exchange for his long hours helping renovate and completing electrical work, the MVFD had access to the School's facilities at off hours and a discounted rate.[7] Although Mr. Perrotti usually donated his time, there were instances in which he was paid, specifically for his involvement with the maze trailer.

The maze trailer took 6-7 months to complete and Mr. Perrotti spent roughly 50 hours on it. The project involved more than just rope lighting; it involved clearing the area for the trailer, bringing in stone for the footings, running power from a panel (200 feet away) to the panel in the trailer, etc. The Town purchased some of the electrical supplies as part of the deal to receive cheaper training for its fire fighters. Mr. Perrotti donated the time it took to install the electrical supplies purchased by the Town. However, the maze trailer was just one of the many jobs Mr. Perrotti completed at the Fire School. The check he received for work done at the maze trailer was really a payment for a multitude of random jobs done by Mr. Perrotti. The check was just written out as maze trailer instead of listing the different work done.

---

[6] The Town did not pay for all electrical supplies used at the Wolcott School. Mr. Perrotti donated some of his own electrical supplies when needed and also charged the School for supplies.

[7] The Defendant anticipates testimony from the director of the Wolcott Fire School who can corroborate Mr. Perrotti's testimony and further help explain the relationship between the Fire School and MVFD at the time.

These two instances (water tower and fire school) were not intentional lies or willful false testimony (as the guidelines require), just an attempt by Mr. Perrotti to explain and dispel the Government's allegations that he must have been stealing electrical supplies because the MVFD purchased substantially more electrical supplies than other Town buildings.  The key here, again, is that Mr. Perrotti was trying to ultimately save the Town money, not defraud it.  It would have cost the Town significantly more money to pay another electrician to install the wire and conduit up the side of this 120 foot tall water tower or complete all the work he did on the maze trailer and other Wolcott Fire School jobs.  A common theme among these payments was that Mr. Perrotti did not think it was relevant to disclose the fact that he got paid; he was solely trying to explain why the MVFD ordered so many electrical parts.

**Fourth**, the Government contends that Mr. Perrotti gave false and misleading testimony regarding the payments he received from Astro Electric.[8] Based on the aforementioned arguments, the Defendant submits than an enhancement on these grounds is unwarranted.

**Fifth**, the Government lists several instances where they contend Mr. Perrotti "made a number of false statements during his direct testimony as to the electrical supplies that he used and the projects that he did at the Fire Department."

    A.   Government's **first** example highlights Mr. Perrotti's testimony regarding his preparations for the 9/11 ten-year anniversary ceremony.  The Government contends that "Mr. Perrotti's testimony regarding the preparation for the 9/11 ceremony went beyond mistake; Perrotti testified falsely when he described the work he did and the materials he used in preparation for the 9/11 ceremony."  Mr. Perrotti's testimony regarding the 9/11 ceremony is perfectly reasonable.  As he testified, he had prepared

---

[8] Defendant directs the Court to his arguments regarding Astro Electric payments made in Defendant's Memorandum of Law in Support of Defendant's Rule 29a Motion (Doc. 101) and its Motion to Reconsider (Doc. 126).

the indoor area in case it rained on the day of the celebration. It didn't rain and they were able to hold the party outdoors where the DJ set up his own stage and lights.

B. Government's **second** example highlights Mr. Perrotti's testimony regarding the generators depicted in Def.'s Ex. K115. We submit that this testimony was not a fabricated story but rather a mistake, as Mr. Perrotti admitted on the stand. He admits this when he testified "Yes, it was a mistake on my part" which indicates he did not willfully provide false testimony.

C. Government's **third** example highlights Mr. Perrotti's testimony regarding Def.'s Ex. K120. To support this contention they rely on the fact the generator had a sticker on it indicating that the next service due date for the generator was "08". They also rely on the fact that they could not find the generator on any invoices from 2011. Again, there are multiple portable generators at the MVFD and Mr. Perrotti could easily have confused them. Additionally, Mr. Perrotti had not been in the MVFD for eight months prior to the day he took the pictures and other members of the MVFD must put the wrong sticker on that generator.

D. Government's **fourth** example highlights Mr. Perrotti's testimony regarding the items in a white trailer located in the MVFD's parking lot, specifically two portable electric heaters that were purchased in 2012. The trailer was used by many different people since Mr. Perrotti's departure and he thought the heaters he took a picture of were the heaters in the invoice. The heaters in question (that appear on the invoice) could have been removed, sold, stolen or used anywhere in the eight months he was absent. When Mr. Perrotti went to take the pictures he did not examine the heaters,

he stood at the entrance of the trailer and took pictures. The heaters in the picture were in the same spot where he would customarily store all of the heaters. When confronted with the fact that they were not the same heaters referenced in the invoices he admitted he made a mistake and originally thought they were the same because that's where he stored them when he was Chief.

E.  Government's **fifth** example stems from Mr. Perrotti's testimony regarding red globe lights that appeared on invoices for the MVFD yet were never found by the FBI nor Mr. Perrotti there. The Government points to the fact that Mr. Perrotti first testified that he installed a fixture and a red globe light in an area next to an emergency phone and that the Town removed them in his absence. On cross examination, he then appeared confused when questioned by USAA Karwan regarding his prior testimony – that he installed the actual globe, not just the fixture. Mr. Perrotti meant to say he installed the fixture with the intent to install the globe in the future, yet never got around to it. The key here is the difference between the light fixture and the globe light itself. Mr. Perrotti admits that on direct he must have misspoke about having installed the fixture and the globe light itself when he only installed the fixture. To support this contention, throughout his direct testimony Mr. Perrotti never tried to create the impression that he somehow installed all the red globe lights around the MVFD and that the Town took them all down in his absence - this was a mistake about a single globe light. Mr. Perrotti later testified (on direct) that he never found any of the red globe lights at the MVFD and believed them to be in a locked closet in the basement of the MVFD that he did not have access to. Therefore, in Mr. Perrotti's direct examination he did not try to mislead the court and jury into believing that he had installed all the globe lights and the Town removed them in an

attempt explain their absence.[9]  He made a mistake when he testified the Town removed the globe light in his absence as the Town only removed the fixture, not the light.

F.   Government's **sixth** example stems from Mr. Perrotti's testimony regarding his fuel purchases at the local gas station.  Here, the Government highlights the fact that Mr. Perrotti originally testified that he only purchased propane at the gas station and then later admitted he used it for propane, gas cans and occasionally to fill his Town truck. Here, Mr. Perrotti admits that this omission was a mistake and the product of a faulty memory, when he said "you jogged my memory, I will say you jogged my memory with respect to that."

It is imperative to remember that Mr. Perrotti was on the stand for nearly three days and introduced over 300 exhibits, all pictures of various electrical jobs and supplies.  It is not unreasonable to believe that Mr. Perrotti would make a few mistakes along the way.  When he did mess up he admitted it; he tried his best to recall what year he purchased the items, what he did with them, or where they stored. It is also important to note that several times through his direct examination Mr. Perrotti corrected himself (without prompt from the Government) and noted that some of the electrical supplies depicted in his exhibits were purchased before 2011 or that a certain electrical job was completed outside of the relevant timeframe.  We submit that the above-referenced incidents merely constitute confusion, mistake or faulty memory, not willful intent to provide false testimony.  As such, the aforementioned instances that the Government submits warrant a two-level enhancement were simply mistakes, not a deliberate and sustained attempt to impede and obstruct the investigation  and do not warrant a two-level enhancement.

---

[9] Putting the red globe lights into context, the whole issue of came up because there was a box of about a dozen red globe lights, (not a single globe light or fixture that wasn't even there anymore) that appeared on MVFD invoices that could not be located at the MVFD.

D.     **Conclusion**

For the aforementioned reasons we submit that the Defendant has not intentionally misapplied any money or electrical supplies that value in excess of $95,000.  The Defendant relies on the Court to make a reasonable calculation of any total loss and submits that such a reasonable calculation, based on a preponderance of evidence, should be significantly lower amount proffered by the Government.  The Defendant further submits that any enhancement for either an abuse of trust or perjury is unwarranted.

THE DEFENDANT, PAUL PERROTTI

By: /s/federal bar # CT038195
Martin Minnella
Minnella, Tramuta & Edwards LLC
530 Middlebury Road
Middlebury, CT 06762
Phone No. (203) 573-1411
Facsimile No.: (203) 757-9313
Email Address: johannas@mtelawfirm.com
Federal Bar No.: ct038195

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | NO. 3:14cr-00215-(JAM) |
| | : | |
| PAUL PERROTTI | : | January 4, 2016 |

## CERTIFICATE OF SERVICE

I, Martin Minnella, hereby certify that on January 4, 2016, a copy of the foregoing MEMORANDUM OF LAW IN OPPOSITION OF GOVERNMENT'S MEMORANDUM OF LAW IN ANTICPATION OF THE FATICO HEARING was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Bar #CT038195 _____

Martin Minnella
Federal Bar No.: CT038195__