UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.                                                                    No. 3:14-cr-00215

PAUL PERROTTI,
*Defendant*.

**MEMORANDUM OF DECISION RE SENTENCING GUIDELINES CALCULATION**

Defendant Paul Perrotti was charged with three counts of defrauding the Town of Middlebury, in violation of 18 U.S.C. § 666(a)(1)(A). Each of the charged counts required the Government to prove that defendant defrauded the Town of more than $5,000 in each of the years 2011, 2012, and 2013, respectively. Following a jury trial, the jury returned a guilty verdict on Counts Two and Three of the indictment (involving the years 2012 and 2013) and was unable to reach a verdict on Count One of the indictment (involving the year 2011). On November 9, 2015, I entered an order denying defendant's post-trial motions. Doc. #121. On January 28, 2016, I conducted a *Fatico* hearing to address the calculation of the Sentencing Guidelines, including calculation of the amount of loss and proposed upward adjustments for abuse of a position of trust and obstruction of justice.  This ruling addresses the Sentencing Guidelines calculations.

*Calculation of "Loss"*

Section 2B1.1 of the Sentencing Guidelines instructs me to determine the approximate amount of actual or intended loss. *See generally United States v. Lacey*, 699 F.3d 710, 717-20 (2d Cir. 2012) (noting in part that the Court "is only required to make a reasonable estimate of the loss"). The Government submitted briefing in advance of the hearing to recommend that the Court calculate an 8-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(E), because the total loss

exceeded $95,000 but was less than $150,000. At the hearing, the Government introduced a summary table (Govt. Exh. #300) in support of its contention that the total loss was $114,821.50.[1] I have considered as well the arguments set forth in defendant's sentencing memoranda and at the *Fatico* hearing.

My focus at the *Fatico* hearing was to determine what quantity of loss was established by at least a preponderance of the evidence due to the offense conduct of conviction or relevant criminal conduct. *See* U.S.S.G. § 1B1.3. The Government's submitted loss amount included both amounts incurred due to the offense conduct of conviction (defrauding the Town) as well as amounts that the Government contends were misappropriated from another entity, the Middlebury Volunteer Fire Department (MVFD), as part of the same course of conduct. Because the relevant conduct calculation must be based only on losses that are due to *criminal* misconduct, I am mindful that the loss calculation should not include costs or expenditures that are alleged to be wrongful solely for lack of proper documentation or because they were incurred in violation of any Town billing policy or generally accepted accounting practice.

*Electrical Supplies Billed to Town*. The Government attributes a large amount of loss to defendant's alleged fraudulent billing of electrical parts to Town. The Government calculates about $25,590.84 in loss (consisting of $12,786.99 in 2011, $8,246.24 in 2012, and $4,557.61 in 2013). *See* Doc. #128 at 7. These loss figures are based on the Government's calculation of the amount billed to the Town for electrical parts that was above the amount expended on average by the Town for electrical parts for other buildings.

---

[1] The Government's briefing notes that the total loss is approximately $112,159.41; it appears not to include the $2,749 payment to Kim Connors in 2014. *See* Doc. #128 at 11. My calculations indicate that the Government's tabulations in Exhibit #300 reflect the alleged loss noted in the Government's other exhibits accurately for a total alleged loss amount of approximately $114,821.50. In any event, the discrepancy does not affect my ruling.

I am not convinced that the Government's statistical methodology is reliable. It seems likely to me that the Fire Department would spend more on electrical parts for its building than another department might spend on an average Town building. Moreover, to the extent that electrical improvement projects were done at the Fire Department as a consequence of a trained electrician serving as chief of the Fire Department, there is nothing criminally wrong with more parts being ordered for use at the Fire Department. Nor did the Government offer particularly persuasive evidence at trial or at the *Fatico* hearing to show that any particular electrical parts that were allegedly improperly billed to the Town ended up in any particular private electrical project of defendant's business. As I discussed in my post-trial ruling (Doc. #121 at 9-11 & n.5), it appears to me as well that the jury was hesitant to credit the Government's proof as to fraudulent billing for electrical parts, and that hesitancy most reasonably explains the jury's decision not to return a guilty verdict as to Count One for the 2011 year. I conclude that the Government has not proved this aspect of its loss claim even by a preponderance of the evidence, except for the minimum amount of $202 that the jury must necessarily have found in order to return a verdict as to Count Three for the year 2013.

*Electrical Supplies Billed to Middlebury Volunteer Fire Department.* The Government attributes loss in the amount of $11,489.66 ($766.13 in 2011; $7,241 in 2012; and $3,482.53 in 2013) for electrical supplies billed to MVFD. Doc. #128 at 7. Here, the Government's claim is that "electrical supplies [were] wrongfully purchased by the MVFD," because such expenses should have been "a cost born by the Town, which owned the Fire Department building and all fire-fighting equipment." *Ibid.* In my view, the fact that certain MVFD expenses could have— but were not—passed on to the Town implicates a dispute about best billing or accounting practices rather than indicating that there was criminal fraud. Evidence was presented at the

3

*Fatico* hearing to show that the claimed expenditures were made subject to and with the approval of the MVFD membership. There is no claim that the parts in question were not actually purchased, nor has the Government presented adequate proof that the parts were not actually used at the Fire Department. Accordingly, I decline to attribute the $11,489.66 claimed by the Government for the defendant's loss calculation.

*Payments to Max Biggins, Andrew Ubaldi, Astro Electric, and Other Expenses.* The Government attributes $13,451.25 in loss to payments made by both the Town and MVFD to Max Biggins ($3,100 and $2,063, respectively), by the Town to Andrew Ubaldi ($2,983.25) and Astro Electric ($1,855), and invoices paid by the Town through MVFD for alleged training expenses and roof repair ($3,450). Doc. #128 at 8; Govt Exh. #300. I conclude on the basis of the evidence presented at trial that a preponderance of the evidence establishes that amounts paid to Biggins and Ubaldi were for work they performed for private clients of defendant's electrical business and thus those payments were fraudulently billed to the Town or MVFD. *See* Doc. #121 at 4-5, 8-9. Likewise, I conclude that the amounts billed through Astro Electric were fraudulently done in order to avoid scrutiny under the Town's conflict-of-interest policy, and that the invoices for training expenses and roof repair were fraudulently intended to disguise defendant's identity as the beneficiary of Town payments. *See id.* at 6, 8-9. Accordingly, I attribute $13,451.25 for purposes of the loss calculation.

*Other MVFD Payments for Electrical Work.* The Government contends that $32,559.74 in loss should be attributed for services that the defendant or his business, Paul Perrotti Electric, billed to MVFD. Doc. #128 at 9. According to the Government, "in light of the fact that any work done at the Fire Department was the responsibility of the Town and not the MVFD, Inc., there would be no reason that PPE would be hired by the MVFD to do electrical work at the Fire

4

Department." *Ibid.* The evidence at the *Fatico* hearing did not convince me that defendant defrauded MVFD (*i.e.*, that he did not actually perform the services in question) or that the MVFD membership did not have an adequate opportunity to review and approve these expenditures for defendant's services. In my view, the fact that these expenses could have been passed on to the Town (but were not) does not establish that there was criminal fraud. Accordingly, I decline to attribute any of these claimed amounts toward the loss calculation.

*Home Depot Card.* The Government contends that defendant opened a Home Depot credit card in the name of MVFD and spent $6,039.38. Doc. #128 at 10. According to the Government, "[t]o the extent that the defendant had a legitimate purchase at the Home Depot that related to the Fire Department, however, he would have been able use the Town's account at the Home Depot," and "there should be no additional charges necessary at the Home Depot in connection with running the Fire Department." *Ibid.* I am not persuaded. Again, the fact that certain expenses could have, or should have, been passed on to the Town does not prove that defendant engaged in criminal fraud by failing to do so. Accordingly, I will decline to attribute any of the Home Depot charges toward the loss calculation.

*MVFD Debit Card.* The Government contends that defendant used the MVFD debit card for his own personal expenses in the amount of $14,857.75 rather than for expenses properly chargeable to MVFD. Doc. #128 at 10 ($7,701.60 for cash withdrawals, $1,398.09 for Dunkin Donuts, $3,841.27 for gas, $1,713.74 for Home Depot, and $203.05 for Costco).[2] It seems plausible to me, based on the evidence presented at the *Fatico* hearing, that defendant as the president of the MVFD would have a debit card, and that he would use the card for the types of

---

[2] These numbers include alleged personal expenses for the year 2010. *See* Govt. Exh. #305. The Government's summary chart (Govt. Exh. #300) and the table in its memorandum (Doc. #128 at 11) use sub-figures totaling $13,598.55 in charges to the debit card for 2011-2013. This discrepancy makes no difference to my decision nor does it materially affect the loss amount for purposes of calculating the Sentencing Guidelines range.

5

charges at issue here—charges that one would expect with the day-to-day operations of an active volunteer fire department. I am not persuaded that any of these charges were criminally fraudulent.

*Victor Buselli and Kim Connors Payments.* The Government contends that defendant fraudulently billed $12,092.75 to MVFD for personal or business expenses paid to Victor Buselli or Kim Connors. Doc. #128 at 10-11; Govt. Exh. #300 (noting alleged fraudulent invoice to Mar-Vic cleaners for $3,803.75 for amount owed to Buselli and payments to Kim Connors of $5,540 and $2,749). I credit this evidence on the basis of testimony and exhibits at trial. Accordingly, I attribute $12,092.75 for purposes of the loss calculation.

In summary, I conclude that the Government has proved by a preponderance of evidence a total of $25,746 of loss for purposes of the Sentencing Guidelines. This corresponds to a sentencing level increase of 4 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(D).

### *Abuse of Trust*

Section 3B1.3 of the Guidelines requires a 2-level increase if the defendant abused a position of public or private trust that significantly facilitated the commission or concealment of the offense. I conclude for the reasons set forth in the Government's memorandum that defendant held a position of trust, and that this dual position as fire chief and president of the MVFD greatly facilitated his ability to engage in fraudulent billing of the Town and MVFD. Doc. #128 at 12-13.

### *Obstruction of Justice*

Section 3C1.1 of the Guidelines requires a 2-level increase if the defendant obstructed justice, including by means of unlawfully attempting to influence a witness. For substantially the reasons set forth in the Government's sentencing memorandum (Doc. #128 at 13-16) involving

his interaction with Max Biggins, I conclude that an obstruction of justice adjustment is warranted—that defendant willfully sought to induce Max Biggins to furnish information to investigators that defendant knew was untrue. Although it is clear from the jury's verdict in this case that the jury did not fully credit defendant's extensive trial testimony, there is no need for me to determine for sentencing guidelines purposes whether any of defendant's trial testimony was intentionally false.

## CONCLUSION

For the foregoing reasons, the Court calculates the Sentencing Guideline as follows:

| | |
|---|---|
| Base offense level (§ 2B1.1(a)(2)) | +6 |
| Loss ($15K-$40K, § 2B1.1(b)(1)(E)) | +4 |
| Abuse of trust (§ 3B1.3) | +2 |
| Obstruction of justice (§ 3C1.1) | +2 |
| Final Adjusted Offense Level | 14 |

Based on defendant's lack of criminal history, the Sentencing Guideline range is 15-21 months imprisonment. This calculation is set forth without prejudice to the parties' arguments for a departure or variance from the prescribed Guidelines range.

It is so ordered.

Dated at New Haven this 6th day of June 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge