## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 3:14cr-00215 (JAM)** |
| **V.** | : | |
| **PAUL PERROTTI** | : | **OCTOBER 19, 2016** |

### DEFENDANT'S MOTION FOR BOND PENDING APPEAL

Pursuant to Federal Rule 46(c) and 18 U.S. Code, Section 3142(a), the defendant, Paul Perrotti, by and through the undersigned counsel, respectfully moves this Court for a stay in the execution of this Court's sentence and allow Mr. Perrotti to remain out on bond pending his appeal.

### (I)    Factual History

On July 23, 2015, a jury convicted Mr. Perrotti on the second and third count of a three count indictment charging Theft from a municipal government receiving federal funds in violation of *18 U.S.C. §666(a)(1)*; the jury could not reach a consensus on the elements of the first count. (Doc.# 89).

On August 29, 2016, this honorable Court sentenced Mr. Perrotti to three (3) months incarceration and 36 months of supervised release, imposed a fine of $7,500 and a special assessment of $200, ordered 200 hours of community service over two years and restitution in the amount of $10,433.25 at the rate of $250 per month. (Doc. #151).  As of right now, Mr. Perrotti is ordered to surrender himself on October 28, 2016 to the U.S. Marshalls to begin serving his sentence.

On September 12, 2016, Mr. Perrotti filed a timely notice of appeal with the trial Court.

(Doc. # 153). At this preliminary juncture, Mr. Perrotti claims the following issues in his

appeal:

1.      Given the deliberate absence of any mention of the MVFD Fire Chief in the Town
Charter as well as the absence of any Town ordinance on the matter, does the application of
Connecticut's enabling statutes with respect to a municipality's powers and authority and related
caselaw as well as the specific enabling authority establishing how municipalities can establish
fire departments, Connecticut General Statutes § 7-301, to Mr. Perrotti's status as MVFD Fire
Chief establish as a matter of law that he is not employee of the Town of Middlebury?

2.      Given that "agent" limited to "employee" only is an element of the crime charged for
which the government bears the burden of proof, did the trial court err when it failed to instruct
the jury as to the common law definition of employee as set forth in the renumeration plus
indicia of control test widely used by both the Second Circuit and the US Supreme Court?

3.      Given that these "business documents" of the Town of Middlebury bear directly on the
issue of whether the defendant, as MVFD Fire Chief, was a Town employee, did the trial court
improperly exclude: (1) the proposed 2007 revisions to the Town Charter, rejected by the
electorate, that would have created a Board of Fire Safety and Ambulance Commissioners with
specific control over the MVFD Fire Chief as well as the inclusion of the MVFD Fire Chief as an
Administrative  Employee, which stands in sharp contrast to the Town Charter which is silent on
the MVFD Fire Chief;  and (2) those sections of two Town of Middlebury Board of Selectmen
minutes concerning the Town Police Chief (hiring and disputes about proposed contract) the
relevance of which is the inclusion of references to the Police Chief in the Town Charter that
stand in sharp contrast to the silence of the Charter on the MVFD Fire Chief?

**(II)    Legal Argument**

**Applicable Legal Standard:**

        Pursuant to Federal Rule 46(c) and *18 U.S.C. §3143(b)*, this Court has discretion to stay

the execution of his Mr. Perrotti's sentence, allowing him to remain out on bond while his

appeal is pending. *Section 3143(b)*, release or detention pending appeal by the defendant states:

        "[t]he judicial officer shall order that a person who has been found guilty
        of an offense and sentenced to a term of imprisonment, and who has filed
        an appeal . . . to be detained, unless the judicial officer finds – (A) by clear
        and convincing evidence that the person is not likely to flee or pose a
        danger to the safety of any other person in the community if released

under section 3142(b) or (c) of this title; and (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in – (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

*18 U.S.C.§ 3143*. As will hopefully become evident, this Court should stay the execution of Mr. Perrotti's sentence and grant his motion for bond pending appeal as he satisfies both prongs of the threshold analysis.

**A.**     ***18 U.S.C. §3143(b)(A):***

**(1)     Mr. Perrotti satisfies, by clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of others in the community if released while his appeal is pending.**

As to the first prong, under *18 U.S.C. Code § 3143(b)(1)(A),* this Court must find, by clear and convincing evidence, that Mr. Perrotti is not likely to flee or pose a danger to the safety of the community. *Id.*   Based on his demonstrated compliance with the conditions of his release on bond to date, particularly as to those conditions under which this Court has permitted Mr. Perrotti to travel out of state for work, including for more than a year after his conviction (Doc. #s 135; 137; 143; 145; 148 ),Mr. Perrotti has earned this Court's confidence that he is neither a threat to society nor a flight risk.

Although admittedly Mr. Perrotti's status is now post-sentencing, and he understands that he now subject to incarceration, the calculus for whether or not he is a flight risk or threat to society has not changed. Indeed, this Court deviated from the sentencing guidelines in limiting its order of incarceration to three months rather than the 15 to 21 months range established by this Court after application of the Sentencing Guideline, (Doc. # 138), in part because of Mr.

Perrotti's service to his country, his community and his family. Moreover, this Court recently permitted Mr. Perrotti to travel out of state for work after his sentencing, exhibiting confidence in Mr. Perrotti's continued compliance with the conditions of his release as well as that he is remains neither a flight risk nor any danger to the community. (Doc. # 156).

Everything that is sacred to Mr. Perrotti, his substantial and substantive family ties and deep roots to the area as well as his status as sole family breadwinner, with children still under the age of majority, counsels that Mr. Perrotti has met his evidentiary burden under the clear and convincing standard that he is not likely to flee or pose a danger to society if this Court grants his Motion for Bond pending Appeal. Compare , *United States v. Illarramendi*, 3:11-cr-41 (SRU) December 11, 2015 (motion for bond pending appeal denied; defendant's history of violating conditions of release in numerous ways while out on pre-trial bond suggest defendant is a flight risk).

**B.**     *18 U.S.C. §3143(b)(B):*

**(1)     Mr. Perrotti's appeal satisfies the Second Circuit's test for "substantial question" articulated in *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985), as it presents questions of law that are so close and integral to the merits of the conviction that a contrary holding would likely result in reversal or an order for a new trial, thus making this appeal neither frivolous nor taken simply for delay.**

That Mr. Perrotti meets the second test under *18 U.S.C. § 3143(b)(B),* that his grounds for appeal are neither frivolous nor being filed as a delay, presents a closer question than *Section 3143(b)'s* first prong, but at its core is no less compelling. His appeal raises first impression issues under *18 U.S. Code §666(a)(*1) in the form of two substantive challenges to the term "employee:" (1) jurisdictional under the particular facts and controlling state law on the limits of municipal powers and authority here that derive solely from the Connecticut's enabling statutes

;and (2) the failure to include indicia of control factors in the jury instruction given. His appeal also raises related evidentiary claims for those sealed and certified public documents bearing on the issue of whether Mr. Perrotti is a Town employee.

At trial, the government alleged only that Mr. Perrotti was an "agent" of the Town of Middlebury (local government), *18 U.S. Code §666(a)(1),* by virtue of his status as an employee. The term "employee" is not defined, but is included, in the case of an organization or government, as an example of "the term 'agent' mean[ing] a person authorized to act on behalf of another person or government." *18 U.S. Code §666(d)(1).* Of note, the general definition of "agent" draws directly from Black's Law Dictionary, which defines "agent" as "[o]ne who is authorized to act for or in the place of another." An "employee" therefore must be "authorized to act," in this case, by the local government. While "authorized to act" is not itself defined in *18 U.S. Code §666*, Black's Law Dictionary again provides appropriate guidance as to its plain meaning.

Black's Law Dictionary[1] defines the word "authorize"[2] as meaning, "[t]o formally approve; to sanction <the city authorized the construction project>." Black's Law Dictionary (10th ed. 2015). "The phrase "authorize[ed] to act' connotes first, an awareness of the intended

[1] When there is no indication that Congress intended a specific legal meaning for the term, the ourt may look to sources such as dictionaries for a definition." *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999).

[2] See also prior definitions of "authorize:" Black's Law Dictionary (10th ed. 2014)(" to authorize" as "[t]o give legal authority; to empower); Black's Law Dictionary (8th ed. 2004)(To "authorize" is "to give legal authority; to empower . . . to formally approve; to sanction"); Black's Law Dictionary (6th ed. 1990)("authorize" to mean "[t]o empower; to give a right or authority to act. To endow with authority or effective legal power, warrant, or right. To permit a thing to be done in the future").

action by the person authorizing it and second, a communication to the person undertaking the action. An assumption that one is not required to obtain approval or that the approving official may well know of the intended action is not the same thing as having gotten authorization to take the action." United States v. Alvarado, 808 F.3d 474, 491 (11th Cir. 2015). It is within this context that Mr. Perrotti's first impression challenges must be reviewed; the Town of Middlebury must have formally approved or given legal authority to the MVFD Fire Chief's status as a Town employee for Mr. Perrotti to satisfy the first element of the offenses for which the jury convicted him.

Because the Town of Middlebury's powers and authority derive only from Connecticut's municipal enabling statutes and related caselaw as well as the specific enabling authority establishing how municipalities can establish fire departments, Connecticut General Statutes § 7-301, does this Court lack jurisdiction as a matter of law, given that the omission of any reference to the MVFD Fire Chief in the Town Charter and ordinances establish that Mr. Perrotti is not a Town employee? When the statutory definition of "agent" for purposes of *§666(d)(1)* is legally and factually limited to whether or not the defendant is a government "employee," and that question is contested, should the jury instruction set forth those elements comprising the common law definition of employee, which includes not simply renumeration but indices of control? Did this Court err in precluding Town of Middlebury public documents that bear on his status as employee, both with respect to the applicability of the enabling statutes as well as indicia of control?

Contrary to the government's characterization, these first impression issues do not challenge a broad construction of "agent" for purposes of §666(d)(1), but rather raise for the first

time the implications of municipal enabling statutes as that relates to the Town's authority as well as that the common law definition of "employee" necessarily must be applied when, as in the instant case, there is conflicting evidence about whether or not the defendant is an "employee" as that term is generally understood  at common law- "a master – servant relationship."[3] These issues are also not inconsistent with reading breadth into the term "employee," as that term has been previously construed to apply to "an employee of any level from the lowest clerk to the highest administrator." *United States v.* Braun, 990 F.2d 98, 101 (3d Cir. 1993). That these issues are ones of first impression stem from the simple fact that every other time an employee met the statutory element of "agent" for purposes of § 666(a)(1), there was no dispute to this particular part of the element. See, e.g. (*Salinas v. United States*, 522 U.S. 52 (1997); deputy sheriff); *United States v. Valentine*, 63 F.3d 459 (6th Cir. 1995); City Recorder who supervised city's fiscal affairs, collected taxes and revenues, dispersed operational funds and issued paychecks); *United States v. Keen*, 676 F.3d 981 (11th Cir. 2012)[4]; zoning inspector who drove county vehicle); *United States v. Braun*, 990 F.2d 98 (3rd Cir. 1993); narcotics agent).[5]

---

[3] Again, Compare *United States v. Illarramendi*, 3:11-cr-41 (SRU)("Illarramendi's briefing does not actually discuss the issues raised in his appeal, but instead argues that he requires release in order to work on his appeal. That justification bears no relationship to the requirements of section 3143(b)").

[4] The government contended that this Court should limit its instruction as to "employee" to ensure the broad Congressional intent of *§666*, in part, by citing *Keen*. In contrast to Mr. Perrotti, Keen never disputed that he was an employee, but instead argued that the government prove he was authorized to expend funds. The Eleventh Circuit rightfully rejected this added specification, holding that the plain language only requires that an individual be authorized to act on behalf of that entity.

[5] Again, the government based its contention, in part, that this Court should limit its instruction as to "employee" to ensure the broad Congressional intent of *§666* by citing *Braun*. Like Keen, Braun did not challenge his status as an employee; rather he claimed that he did not hold a

**(A)     This appeal is not taken simply for delay.**

Mr. Perrotti has devoted approximately two thirds of his life to the Middlebury Volunteer Fire Department, joining first as a junior firefighter at the age of thirteen, elected in 1997 by his peers as MVFD Fire Chief, and re-elected in every even year thereafter until his arrest on November 6, 2014. He also served as President of the Waterbury Area Fire Chiefs for two years, an eight town regional consortium that governs the state Wolcott Fire School. That his MVFD peers chose him repeatedly to serve as MVFD Fire Chief over a seventeen year period and that Waterbury Regional area Fire Chiefs similarly honored him are a testament to Mr. Perrotti's leadership and character. Moreover, having been certified as an instructor for the State in firefighter training, Mr. Perrotti, as MVFD Fire Chief, required that every Middlebury volunteer firefighter raise the bar by becoming certified to a Fire 1 level, consisting of 160 hours of state mandated training.  Much of who Mr. Perrotti is at his core revolves around his more than thirty year devotion to the protecting his community through his extended service with the Middlebury Volunteer Fire Department.  This appeal is not taken for delay but rather to restore his reputation in his communities: with his Town, his MVFD peers and his wider state firefighting connections.

**(B)     Issues on Appeal:**

**(1)     Given the deliberate omission of any mention of the MVFD Fire Chief in the Town Charter as well as the absence of any Town ordinance on the matter, does the application of Connecticut's enabling statutes with respect to a municipality's powers and authority and related caselaw as well as the specific enabling authority establishing how municipalities can establish fire departments, Connecticut General Statutes § 7-301, to Mr. Perrotti's status as MVFD Fire Chief establish as a matter of law that he is not employee of the Town of Middlebury?**

---

position of trust. The Third Circuit held that "agent" includes an employee of any level from the lowest clerk to the highest administrator and does not require that the employee hold a position of trust, to which Mr. Perrotti has no quarrel.

**Legal Standard:**

In the absence of a genuine issue of material fact, it is appropriate for the court to determine employment status as a matter of law. *Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 656 F.3d 348, 352 (6th Cir. 2011) (citing *Simpson v. Ernst & Young*, 100 F.3d 436, 439 (6th Cir. 1996)).

**Statement of Facts and Legal Analysis:**

From his election in 1997 until his arrest on November 6, 2014, Mr Perrotti was the Chief of the Middlebury Volunteer Fire Department (hereinafter "MVFD"), a separately incorporated non-profit public service organization that is legally distinct from the Town of Middlebury. (Govt.'s Ex. 8). Mr. Perrotti was routinely involved with submissions to the Town of bills and other reimbursement requests for funds relating to the MVFD Fire Department and the upkeep of the Fire Department buildings that the Town owned.

The government intentionally chose not to precede on its indictment that Mr. Perrotti was also an "agent" of the Town of Middlebury because of his role as President of the 501(c )(3) entity, the Middlebury Volunteer Fire Department, which the original indictment wrongly alleged was a government entity. (Doc. # 69, p. 6 n.4). The Indictment had initially alleged that "the MVFD was primarily funded by the Town of Middlebury, which provided funding to MVFD's operating bank accounts[, and a]s such, the MVFD was a 'government agency' as that term is defined by *18 U.S.C. § 666(d)(2)*."(Doc. #1, p. 1, Paragraph 2). Section *666(d)(2)* provides that '"the term 'government agency' means a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board and bureau, and a corporation or other legal entity

established, and subject to control, by the government or governments for the execution of governmental or intergovernmental program." As the government eventually conceded, the MVFD, which incorporated itself as a separate 503(c )(3) nonprofit, cannot satisfy the legal definition of "government agency" under *§ 666(d)(2)* because it was not established by the Town of Middlebury  nor is it included anywhere in the Town Charter.  Of equal importance, the MVFD cannot satisfy the legal definition of "government agency" under *§ 666(d)(2)* because it is not "subject to control" by the Town of Middlebury. Although the Town of Middlebury did appropriate funds to the MVFD, it did so pursuant to its authority under Connecticut General Statutes § 7-301 that provides in relevant part: "[n]othing in this section shall prevent any town, city, borough or incorporated fire district from appropriating funds to a volunteer fire company or companies for services rendered or to be rendered within the confines of such town, city, borough or district by such fire company or companies, provided such town, city, borough or incorporated fire district shall deem it in the public interest to do so. It is also of legal and factual significance that Connecticut's municipal enabling statutes did not preclude the Town of Middlebury from making its appropriation of funding to the MVFD conditional on MVFD's agreement that it was "subject to control" by the Town. See, Connecticut General Statutes § 7-301.  Such conditional control however would have required the Town of Middlebury either to revise its Town Charter, which the 2007 proposed revisions, rejected by the electorate, attempted to do through the addition of a Board of Fire Commissioners and the inclusion of the MVFD Fire Chief as an Administrative employee, or adopt an ordinance to that effect, which has not occurred.

Instead, the government proceeded on the limited "theory that the defendant is an agent under subsection (d)(1) because he was an employee of the Town, and that the Town classified him as such[.]" (Doc.#69, p. 7). In response, Mr. Perrotti asserts that he cannot be an "employee" of the Town of Middlebury because the application of Connecticut's enabling statutes with respect to a municipality's powers and authority and related caselaw as well as the specific enabling authority establishing how municipalities can establish fire departments, Connecticut General Statutes § 7-301, to Mr. Perrotti's status as MVFD Fire Chief as it relates to the Town of Middlebury is controlled by the deliberate omission of any mention of Fire Chief in the Town Charter as well as the absence of any Town ordinance[6] on the matter.

The government claimed that the Town of Middlebury "classified" Mr. Perrotti as an "employee." Thomas Gormley, who was First Selectment in 2011, testified that Mr. Perrotti was not an employee of the Town; First Selectman Edward St. John, testified that Mr. Perrotti was an employee of the Town.[7] Such disparate characterizations of Mr. Perrotti's employment status

---

[6] The only ordinance that references the Middlebury Volunteer Fire Department authorizes MVFD officers to send fire equipment owned by the Town of Middlebury to assist in mutual aid to adjoining towns. Town of Middlebury Ordinances, p. 8; Voted and adopted March 22, 1951. Recorded Vol. 7, Page 66. The only other "fire" related ordinance concerns the establishment of fire lanes, which task belongs to the Fire Marshall, which position is an Administrative Employee of the Town of Middlebury as set forth in the Town Charter, Chapter VI, Section 602 (H). Town of Middlebury Ordinances, pp. 33-34.
Publication date: March 1, 1986 Effective date of Fire Lane ordinance: March 16, 1986 Recorded in Vol. 7 Page 376.
[7] The jury could not agree on the first count of the indictment that alleged theft in the year 2011 when Mr. Gormley was First Selectman. Mr. St. John was the First Selectman in 2012 and 2013; the jury convicted Mr. Perrotti on the second and third counts that alleged theft in the years 2012 and 2013. That these two First Selectmen could not agree that Mr. Perrotti, as MVFD Fire Chief, was a Town employee may account for the hung jury as to Court One. That these two First Selectmen could not agree as to Mr. Perrotti's employment status with the Town also counsels that the jury instruction necessarily should have included more than simple renumeration as a matter of proof. See, discussion infra.

from the two individuals who served as First Selectman of the Town of Middlebury for the years

at issue in the Indictment counsels this Court to turn first to the municipal enabling statutes that

establish as a matter of law the limited parameters of the Town of Middlebury's powers and

authority.  Notably, former First Selectman Gormley's testimony that Mr. Perrotti was not a

Town employee is consistent with the silence in the Town Charter on the MVFD Fire Chief as

well as the evidentiary relevance of the proposed 2007 Charter revisions that the electorate

rejected and the lack of Town ordinances as to the MVFD providing fire services as construed

through the lens of applicable Connecticut statutes enabling municipal authority generally and

Connecticut General Statutes § 7-301 specifically, the enabling municipal authority on the

"Establishment of Fire Department."

It has been well established in Connecticut jurisprudence "that a city's charter is the

fountainhead of municipal powers . . . . The charter serves as an enabling act, both creating

power and prescribing the form in which it must be exercised. . . . Agents of a city . . . *have no

source of authority beyond the charter*. . . . In construing a city charter, the rules of statutory

construction generally apply. . . ." *Bellsite Dev., LLC v. Town of Monroe*, 155 Conn.App. 131,

107 A.3d 1028 (2015)(Emphasis supplied).

As this Court noted, "Chapter VI, [t]he Fire Chief position is not specified as a Town

Officer in the Town's Charter[.]"[8] (Def.'s  Ex. A).  Although significant and tilting in Mr.

Perrotti's favor, that one omission[9] is not the end of this particular inquiry as it relates to the

---

[8] The Town of Middlebury Charter submitted as a defense exhibit establishes that it was
"Adopted November, 1987; Revised November, 1993; Revised, November 2000; Revised,
November 2012." (Def.'s Ex. A, p. 1).
[9] Chapter VI, Section 602 of the Town Charter establishes the Town's administrative employees
and fails to include the Fire Chief. In addition, Section 602 (O) provides that "there shall be such

issue of whether or not Mr. Perrotti was an employee of the Town. Chapter VI, Section 601, of the Town Charter, states in relevant part that "[t]he Board of Selectmen shall have the power to hire, establish the working conditions of, promote, discipline, suspend and dismiss all persons employed by the Town, either full or part time, except as otherwise specified in this Charter."[10] (Def.'s Ex. A, p. 25). In Middlebury, however, the Fire Chief is elected solely by the MVFD members. Notably, the Town lacked the authority under its Charter to hire, establish his working conditions, fire or suspend Mr. Perrotti as MVFD Fire Chief. Moreover, Chapter VI, Section 603 of the Town Charter states in relevant part that:

> A. The First Selectman shall cause to have prepared: 1. A description of the duties and responsibilities of each position in the Town's service and of the minimum qualifications for appointment to such position. The description may include offices and positions established by this Charter except elected offices. 2. A set of personnel rules, which shall provide, among other things, for a probationary period of employment, hours of work, vacations, sick leaves and other leaves of absence, removals and such other rules as may be necessary to provide an adequate and systematic procedure for the administration of the personnel affairs of the Town. . . .

(Def.'s Ex. A, p. 29). Again, the Town had no authority under its Charter to define the duties and responsibilities of Mr. Perrotti as Fire Chief, nor could it require a probationary period, establish a process for removal or specify his hours of work. The Town Charter in its entirety thus establishes that Mr. Perrotti, as MVFD Fire Chief, is not a Town employee.

---

other administrative employees as the Board of Selectmen shall determine from time to time by resolution or ordinance." The Town could not add the Fire Chief, without amending its Charter, unless it adopted an ordinance or resolutions (and there are none).

[10] There is nothing whatsoever about the Fire Chief in the Town Charter; this is in sharp contrast to the Revised Town Charter that was rejected by the electorate in 2007, which this Court precluded based on the government's claim that it was not relevant although it plainly established the MVFD Fire Chief as a Town employee subject to indicia of control. (Doc. #73, p. 2-3).

Comparing the omission from the Town Charter of the MVFD Fire Chief against those comparable public safety positions referenced specifically in the Town Charter further persuades that Mr. Perrotti, as MVFD Fire Chief, is not a Town employee as a matter of law. Although the Town Charter is silent on the position of Fire Chief, in striking contrast, Chapter VI, Section 602 (H) establishes that a "Fire Marshall" is an Administrative Employee of the Town. (Def.'s Ex. A, p. 27). Subsection (H) plainly sets forth indicia of control that the Board of Selectmen exercises over the Town Fire Marshall, including the power of appointment, the power to remove for cause and that the Fire Marshall shall perform such duties and functions as are derived from the General Statutes and "as may be required of the Board of Selectmen." Id. Such sharp contrast is of both factual and legal significance to whether Mr. Perrotti, as MVFD Fire Chief, is a Town employee.

In addition, Chapter II, Section 202 (F) of the Town Charter establishes a Board of Police Commissioners, which had the authority to recommend a Chief of Police to the Board of Selectmen. (Def.'s Ex. A, p. 8). Moreover, Section 202 (F) further provides that "[s]uch person shall have training and experience as specified in the position description on file with the Town Clerk."(Id). Notably, the Town Charter, has no such Fire Department commission and there is no job description for the Fire Chief on file at the Town Clerk's office.

That the Town Charter prohibited the Town or its Board of Selectmen from exercising any indicia of control usual and customary to an employment relationship over Mr. Perrotti in his capacity as MVFD Fire Chief is further exemplified by comparison to the proposed Charter Revisions in 2007, which the electorate rejected, and this Court precluded from evidence on the basis of the government's arguments either that it was not relevant under F.R.E. 401 or any

*minimal* probative value was substantially outweighed by the danger of confusing the issues , misleading the jury[, u]ndue delay and wasting time. (Emphasis in original) (Doc. #73, p. 3; Doc. # 79). Those 2007 proposed Charter Revisions included establishing a Fire Commission with the authority to ratify, refuse to ratify requiring another MVFD nomination and after four rejections independently choose the Fire Chief itself, deratify for cause and impose term limits on the MVFD Fire Chief; the proposed Charter Revisions for the first time also added the MVFD Fire Chief (subject to ratification) to the list of Administrative employees under Chapter VI, Section 602. (See, Exhibit A, Certified Copy of Proposed Charter Revisions 2007 and electorate vote rejecting said revisions as certified by Town Clerk to Connecticut Secretary of State, Election Division, attached hereto).

Beginning in 1998, at the initial rate of $200 per month, Mr. Perrotti did receive a stipend from the Town because he was the MVFD Fire Chief; that stipend had reached $7,800 per year at the time of his arrest, which for the forty hour week he routinely put in as MVFD Fire Chief amounts to an hourly wage of approximately $3.90 per hour well below minimum wage laws state or federal. For many years, Mr. Perrotti received a W-1099, a tax document issued to independent contractors. (Def.'s Exs. D, E, F, G). Without any change in his duties or in the Town Charter, or its ordinances, at some point Mr. Perrotti received a W-2 income statement for his stipend; he also signed, at the Town's request, a W-4 tax document identifying himself as an employee. (Govt.'s Exs. 10B-10C & 101).

As the MVFD Fire Chief, Mr. Perrotti also received for his use a Town-owned car, gasoline and a cellular phone. Mr. Perrotti performed budgetary services for the Town distinct from his role as volunteer president of the Fire Department. Although this Court noted that Mr.

Perrotti "even supervised another full-time Town employee," citing (Doc. #107 at 28), Kim

Connors[11] was a part time MVFD employee and thus properly supervised by Mr. Perrotti in his

capacity as MVFD's president.

"The legislature has been very specific in enumerating those powers it grants to

municipalities. See General Statutes Title 7." *Buonocore v. Branford*, 192 Conn. 399, 403, 471

A.2d 961 (1984). "The only powers a municipal corporation has are those which are expressly

granted to it by the state. *Pepin v. Danbury*, 171 Conn. 74, 83, 368 A.2d 88 (1976). Delegation of

authority to municipalities is narrowly construed and in determining whether a municipality has

certain authority, the court does not search for a statutory prohibition against the exercise of such

authority but, rather, for a specific statutory grant of authority." *Simons v. Canty*, 195 Conn. 524,

448 A.2d 1267 (1985).

In denying Mr. Perrotti's Rule 34 motion, this Court opined as to why the government

did not simply charge Mr. Perrotti as an "agent" because that is all that the statute requires. (Doc.

# 121, pp. 14-15).[12] But "agent" as most broadly defined still requires being "*authorized to act*

*on behalf of another* person or government." *United States v. Fernandez*, 722 F.3d 1, 9-10, (1st

Cir. 2013)(Emphasis supplied). The Middlebury Town Charter sets the limits of who is

authorized to act on behalf of the Town. It is well established "that agents of a city, including its

---

[11] Of note, the government did not include those checks that Ms. Connors wrote to herself from the MVFD bank account that she claimed Mr. Perrotti had authorized as a way to pay her back from work she had done for his electrical company to establish the statutory annual theft threshold of $5000 in funds from the Town.

[12] With all due respect to this Court, its conclusion "that any possible instructional error would be harmless in view that the Indictment also alleged that the defendant was an 'agent' of the Town and that the evidence overwhelmingly established at least his 'agent' status[,]" flies in the face of the government's deliberative decision to limit 'agent' under the factual circumstances of Mr. Perrotti's case to proving his status as an 'employee' of the Town.

commissions, have no source of authority beyond the charter. [T]heir powers are measured and

limited by the express language in which authority is given or by the implication necessary to

enable them to perform some duty cast upon them by express language." *Bellsite Dev., LLC v.

Town of Monroe*, 155 Conn.App. 131, 140, 107 A.3d 1028 (2015). The government thus

knowingly and intentionally limited its indictment to agent as "employee," because the Town

Charter was utterly silent on both the MVFD and the MVFD Fire Chief; the government could

not legally establish authority as an agent even under this broadest of constructions because the

Charter had no provision whatsoever that granted the MVFD Fire Chief authority to act on the

Town's behalf of any kind.[13] "'[E]very person who deals with [a municipal corporation] is

bound to know the extent of its authority and the limitations of its powers.' (Citations omitted;

internal quotation marks omitted.) *Fennell v. Hartford*, 238 Conn. 809, 813-14, 681 A.2d 934

(1996)." *Bellsite Dev., LLC v. Town of Monroe*, 155 Conn.App. at 140-141.

    Just as there is no mention of a fire department or Fire Chief in its Town Charter, the

Town of Middlebury has also not adopted any ordinances related to the establishment of a fire

---

[13] The government could not establish that Mr. Perrotti met the statutory definition of agent as a "partner, director, officer, manager or representative" of the Town of Middlebury; it did not charge him under any of these other specifically delineated categories of "agent." By way of example, the government cited *United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013) to support a broad reading of § 666(d)(1)(Doc. #69, p. 4). Fernandez however concerns agent as "representative." "The plain language of the statute includes a " representative" of a " government" in the list of positions that fall under the statute's definition of " agent," 18 U.S.C. § 666(d)(1), and there is no more classic government " representative" than a legislative branch officer. See *United States v. Lipscomb*, 299 F.3d 303, 333 (5th Cir.2002) ("Congress clearly sought to apply § 666 to legislative-branch officials." ); *United States v. Sunia*, 643 F.Supp.2d 51, 67 (D.D.C.2009) (acknowledging that " a legislator who misuses his legislative authority to facilitate corrupt practices affecting agency programs that receive federal funds may well fall within the ambit of § 666" )." *United States v. Fernandez*, 722 F.3d at 8-9.

department or the provision of fire services. Such omissions are of both factual and legal

significance to the issue of Mr. Perrotti as Town employee.[14]

Notably, the Town of Middlebury chose not to exercise its powers, pursuant to

Connecticut General Statutes § 7-301, by ordinance "for the establishment of a town fire

department and for the management, discipline and control thereof by the board of selectmen or,

if there is a town council, by the town council, or by a board of fire commissioners of such

number, chosen in such manner and for such terms as the ordinance provides."[15] Moreover, the

Town of Middlebury also chose not to exercise its powers, pursuant to § 7-301, to enter into an

agreement with the Middlebury Volunteer Fire Department, that is "if the ordinance so provides,

the board of selectmen, town council or board of fire commissioners shall enter into an

agreement with any volunteer fire company or companies within the town for the protection

thereof from fire on such conditions as to financial assistance and the observance of the

regulations of the board of selectmen, town council or board of fire commissioners as such

ordinance prescribes[.]" *Id.* Instead, the Town of Middlebury, pursuant to its statutory authority

under §7-301, chose simply to appropriate funds to the MVFD as it deemed in the public interest

under that section of the enabling statute devoid of any indicia of control over a voluntary fire

---

[14] In the absence of an express grant of power from the state, municipalities do not have the power to legislate. *Bottone v. Town of Westport*, 209 Conn. 652, 553 A.2d 576 (1989).

[15] Had the Town of Middlebury, by ordinance, established a town fire department, then it could have utilized its powers pursuant to Connecticut General Statutes § 7-301 to "make regulations for the conduct of the fire department and may appoint, discipline and remove for cause shown all employees of the department." Id.

department.[16]  That is why Mr. Perrotti received a "stipend"[17] from the Town; that is also why he is not a Town employee as a matter of law.

**(2)        Given that "agent" limited only to "employee" is an element of the crime charged for which the government bears the burden of proof, did the trial court err when it failed to instruct the jury as to the common law definition of employee as set forth in the renumeration plus indicia of control tests widely used by both the Second Circuit and the US Supreme Court?**

**Applicable Legal Standard:**

"A defendant who challenges a jury instruction must establish (1) that he requested an instruction that "accurately represented the law in every respect" and (2) that the instruction actually given was, viewed as a whole, prejudicial to his rights. *United States v. Pujana-Mena*, 949 F.2d 24, 27 (2d Cir.1991) (internal citation and quotation marks omitted)." *United States v. Yousef*, 327 F.3d 56, 130 (2nd Cir. 2003). "To secure reversal based on a flawed jury instruction, a defendant must demonstrate both error and ensuing prejudice." *United States v. McIntosh*, 753 F.3d 388, 392 (2d Cir. 2014) (internal quotation marks omitted).  Where a defendant claims that a district court erred for failing to give his requested instruction, that conviction is overturned only if "that instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge."

---

[16] Connecticut General Statutes § 7-301 also provides in relevant part: "[n]othing in this section shall prevent any town, city, borough or incorporated fire district from appropriating funds to a volunteer fire company or companies for services rendered or to be rendered within the confines of such town, city, borough or district by such fire company or companies, provided such town, city, borough or incorporated fire district shall deem it in the public interest to do so."

[17] Of legal and factual significance to the issues Mr. Perrotti is presenting in his appeal, that the payment he received from the Town of Middlebury was denominated as a "stipend" proved of some significance to the jury during its deliberations as it sought from this Court the "State of Connecticut labor law definition of 'stipend'." (Court Exhibit #2).

*United States v. Quattrone*, 441 F.3d 153, 177 (Cir. 2006)(quoting *United States v. Doyle*, 130 F.3d 523, 540 (2d Cir.1997)).

**Legal Analysis:**

Although the term "employee" is not defined in the statute, *United States v. Sotomayor-Vazquez*, 249 F.3d 1 (1st Cir. 2001), rightfully instructs in construing "agent" broadly that "the inclusion of 'employee' in the statutory language as a separate qualification suggests that the definition of agent includes 'directors,' 'managers, and representatives who are not technically employees.[18] *Id.* at 8. Such expansive reasoning however in no way detracts from Mr. Perrotti's request for a jury instruction that defined "employee" as that term has long been understood at common law, renumeration plus indices of control. Indeed, as is set forth with more particularity below, that often cited *Sotomayor-Vazquez* concludes that "employee" as a separate qualification thereby defines the terms "directors," managers" and "representatives" included under "agent" as those "who are not technically employees" counsels that the term "employee" necessarily references its common law roots, renumeration plus indicia of control by employer. In defining the term "agent," Congress chose not to limit that term to its broadest construction "a person authorized to act on behalf of another person or a government," which it could have. Rather, Congress explicitly included "employee" along with "servant . . . partner, director, officer, manager, and representative[,]" within the scope of the term "agent" in the case of an

---

[18] This Court presumes that "each term in a criminal statute carries meaning," *United States v. Wells*, 519 U.S. 482, 493 n. 14, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997); see also *Cooper Indus., Inc. v. Aviall Servs.*, Inc., 543 U.S. 157, 167, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004) (referencing the " settled rule" that courts "must, if possible, construe a statute to give every word some operative effect"). "Employee" thus has a distinct meaning from the terms "directors," managers" and "representatives" included under "agent" as set forth in 18 U.S.C. § 666(d)(1).

"organization or government."[19] *18 U.S.C § 666(d)(2)*  "Employee" therefore must have a distinct meaning from these other terms.  Because an "employee" must also be "authorized to act," which connotes a formal, legal sanction; Congress necessarily drew on its common law definition when it chose to include the term "employee" as an example of "agent."

The jury instruction at issue defined "employee" as part of the first element of the offense as "a person authorized to act on behalf of the government (Town of Middlebury) and who works for wages or salary."  Mr. Perrotti, through counsel, sought a jury instruction that included not simply renumeration, the limitation that the government asserted, but indicia of control by the Town, suggesting either the Connecticut Department of Labor regulations or an enumeration of the *Darden* factors first utilized by the US Supreme Court in construing the meaning of the term "employee" under ERISA. See, Doc. # 67; *Nationwide Mutual Insurance Company v. Darden,* 503 U.S. 318 (1992).

It is a settled principle of statutory interpretation that, absent other indication, "Congress intends to incorporate the well-settled meaning of the common-law terms it uses." *Neder  v. United States*, 27 U.S. 1, 23 (1999). Likewise, it is a well-established rule of construction that " '[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.' " *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992) (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 527 U.S. 22 730, 739 (1989)); see *Standard Oil Co. of N. J. v. United States*, 221 U.S. 1, 59 (1911) ("[W]here words

---

[19] Congress can be deemed to have excluded all others not expressly mentioned. See, e.g., *United States v. Vonn*, 535 U.S. 55, 65 (2002) ("[E]xpressing one item of [an] associated group or series excludes another left unmentioned.").

are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense").

These well settled principles are not limited to construction of civil statutes, such as defining "employee" under ERISA by reference to the *Darden* factors as the government maintained, but plainly extend to federal appellate interpretation of criminal statutes as well. See, e.g. *Sekhar v. United St*ates, 133 S.Ct. 2720, ___ U.S. ___ (2013)(defining "property" under Hobbs Act); *Neder v. United States*, 527 U.S. 1, 23 (1999) (construing "defraud," under the rule that Congress intends to incorporate the well-settled meaning of the common-law terms it uses, no inference can be drawn from absence of express reference to materiality that Congress intended to drop that element from criminal fraud statutes); *Braxton v. United States*, 500 U.S. 344, 351, n. (1991)( criminal statute does not specify elements of "attempt to kill"; they are those required for an "attempt" at common law); *United States v. Tropiano*, 418 F.2d 1069, 1075 (2nd Cir. 1969) ("concept of property under the Hobbs Act . . . includes, in a broad sense, any valuable right considered as a source or element of wealth").

Applying these legal principles of statutory construction to *18 U.S.C § 666((d)(1)*, it is immediately apparent that Congress used the common law definition of "agent" derived from Black's Law Dictionary. There is thus nothing in the language of the statute or its context that suggests that Congress did not also intend "employee" to retain its time-tested meaning under the common law – that is, the master-servant relationship. Moreover, the common law meaning of employee is also not inconsistent with a broad reading of that term because it has been previously construed to apply to "an employee of any level from the lowest clerk to the highest administrator." *United States v.* Braun, 990 F.2d 98, 101 (3d Cir. 1993).

The jury instruction here relied on the dictionary definition limiting "employee" to "a person who works for another person or [entity] for wages or a salary." (Doc.# 69, p. 8). Independent contractors, who are not employees for purposes of federal labor and tax laws, however, satisfy the dictionary definition that this court applied in its jury instructions as to "employee" under § 666(d)(1). That overlap, in and of itself,[20] counsels that the jury instruction here constituted harmful error when examined against the reasoning of those Circuit Courts that have extended the broad reach of § 666 to independent contractors. While independent contractors can indeed be "agents" for purposes of *§ 666,* it is not because of their status as an "employee" but rather whether the defendant was "authorized to act on behalf" of the government entity and had the authority "to act on behalf of another." See e.g. *United States v. Sotomayor-Vazquez,* 249 F.3d 1, 8 (1st Cir.2001) (finding consultant qualified as an agent and interpreting § 666 "to include persons who act as directors, managers, or representatives of covered organizations"); *United States v. Vitillo*, 490 F.3d 314, 323 (3rd Cir. 2007)(independent contractor could meet definition of "agent" even though that term was not specifically delineated in the second clause of the subsection). The appellate courts that have broadly interpreted "agent" to include "independent contractor," which term is not specifically delineated in § 666, have also contemporaneously excluded "independent contractor" from the included statutory term "employee." Such analysis supports Mr. Perrotti's claim that the jury instruction here

---

[20] The US Supreme Court's " resistance" to treating statutory language as surplusage " is heightened when the words describe an element of a criminal offense." *Ratzlaf v. United States*, 510 U.S. 135, 140-41, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). "Employee" thus has a distinct meaning from the terms "directors," managers" and "representatives" included under "agent" as set forth in 18 U.S.C. § 666(d)(1).

constituted harmful error as "independent contractor" is not subsumed within "employee" under the common law.

The legal definition of "employee" focuses on more than the monies paid for services provided. The US Supreme Court has often turned to Black's Law Dictionary to define a common law term, including in the context of criminal law.[21] Black's Law Dictionary defines "employee" as "a person in the service of another under any contract for hire, express or implied, oral or written, where the employer has the power or right to control and direct the employee in the material details of how the work is to be performed." Prior to this court's limiting its jury instruction in accordance with the dictionary definition of employee, courts that have had to construe the term "employee" for purposes of the particular federal law at issue generally evaluate the totality of the circumstances with a focus on whether the employer controls the work process. "Although the specific classification does depend on the federal law being applied,[22] the

---

[21] *Sekhar v. United States*, 133 S.Ct. 2720, ___ U.S. ___ (2013)(Alito, J., with whom Kennedy, J. and Sotomayor, J. join, concurring in the judgment)(referencing Black's Law Dictionary to construe "property" for purposes of extortion under the Hobbs Act); *United States v. Denedo*, 556 U.S. 904,   (2009)(citing Black's Law Dictionary for familiar meaning of "relief" in jurisdictional challenge to US Supreme Court review of Court of Appeals for Armed Services decisions); *Lopez v. Gonzales*, 549 U.S. 47, 53-54 (2006)(citing Black's Law Dictionary (8th ed. 2004) to define "traffic" under criminal statute).

[22] "Courts have developed three tests to be used in determining a worker's status: the common-law test, the economic realities test, and a hybrid test that incorporates various elements of both of those tests. Because the tests have been applied to different Federal statutes, the characterization of a worker as an employee or an independent contractor can vary, depending on which statute is being applied. As a result, the same person can be classified as an employee under one test and the relevant Federal laws to which that test is applied, but as an independent contractor under another test and its relevant Federal laws. Furthermore, different tests are applied to the same Federal law, depending on which jurisdiction a case is heard in. However, because each of the tests evaluates the totality of the circumstances behind the employment relationship, the overlap in the tests with respect to renumeration and indicia of control, is substantial." Charles Muhl, <u>What is an employee? The answer depends  on the Federal law</u>, Monthly Labor Review (January 2002), p. 5.

overriding factor is who has the 'right to control' the work process, and the relationship is based upon all the characteristics, regardless of what label the employer applied to the worker." Charles Muhl, <u>What is an employee? The answer depends on the Federal law</u>, Monthly Labor Review (January 2002).[23]

In determining whether an individual meets the statutory definition of "employee," it has never been legally sufficient that the label supplied by an employer controls. In its objection to Mr. Perrotti's suggested jury instruction that "employee" be modeled after the common law definition utilized in Darden , the government first asserted that *Darden* interpreted the term "employee" under the Employment Retirement Income Security Act (ERISA) and that its reach was limited because there is no right to a jury trial in an ERISA action because those suits seek equitable relief. (Doc. #69, p. 9). The government then postured that "[t]o the extent that the defendant believes that a different definition of "employee" is legally required, he should cite legal authority to support the importation of that definition of "employee" from another statutory context (i.e., tax, labor, civil rights, disability law, whistleblower provisions etc) into this statute." (Doc. #659, p. 10). The response here is simple, by intentionally including the term "employee," Congress adopted its well settled, common law meaning, which includes both renumeration and indicia of control.

"[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning

_____

[23] This article provides a comprehensive review of the three tests courts have developed to determine a worker's status: the common law test, the economic realities test and the hybrid test that incorporates various elements of both of those tests. Because each test evaluates the totality of the circumstances behind the employment relationship, the overlap in the tests is substantial.

its use will convey to the judicial mind unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263 (1952). . . .   Or as Justice Frankfurter colorfully put it, "if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947)." *Sekhar v. United St*ates, 133 S.Ct. 2720, ___ U.S. ___ (2013). In this case, "employee" transplants much soil, well fertilized over time, by both renumeration and indicia of control as its defining characteristics.

"In the past, when Congress has used the term 'employee' without defining it, the US Supreme Court has concluded that Congress intended to describe the conventional master-servant relationship as understood by common law agency doctrine. See, e.g., *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 322-323 (1974); *Baker v. Texas & Pacific R. Co*., 359 U.S. 227, 228 (1959) (per curiam); *Robinson v. Baltimore & Ohio R. C*o., 237 U.S. 84, 94 (1915)." *Commun. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-740.  "The Supreme Court has also explained that where Congress has not provided a helpful definition for 'employee,' we should assume Congress had in mind "the conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992) (noting that when Congress has not provided a helpful definition for 'employee,' we should assume Congress had in mind 'the conventional master-servant relationship as understood by common-law agency doctrine'); accord *Salamon v. Our Lady of Victory Hosp*., 514 F.3d 217, 226 (2d Cir.2008). Under this doctrine, "[w]hether a hired person is an employee under the common law of agency depends on a fact-specific analysis of thirteen factors. (citation omitted). Those factors are:

the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. No one of these factors is determinative.

Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (citations omitted)." *United States v. Connolly*, 552 F.3d 86, 92 (Cir. 2008). "The crux of Darden's common law agency test is 'the hiring party's right to control the manner and means by which the product is accomplished.' 503 U.S. at 323." *Weary v. Cochran*, 377 F.3d 522, 525(6th Cir. 2004)(Age Discrimination claim).

That the federal legislative soils are fertile with "employee" as understood at common law is made manifest by an examination of those other areas of federal law that the government propounded. (Doc.# 69, p. 10). The IRS uses a 20 factor test to determine employment status. Both Title VII and the American with Disabilities Act, which, like ERISA, also define "employee" as "an individual employed by an employer" utilize the Darden factors approach. *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir.1997)(applying two part threshold renumeration test; is there renumeration and if so, look to "the thirteen factors articulated by the Supreme Court in Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989) to determine whether an employment relationship exists) *Eisenberg v. Advance Relocation and Storage, Inc.*, 237 F.3d 111, 113-14 (2d Cir.2000)(court places greatest emphasis on "the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks"); *Clackamas Gastroenterology Assocs. v. W*ells, 538 U.S. 440, 444-45 (2003) (reaffirming

Darden's approach in context of Americans with Disabilities Act, which also defines an employee as "an individual employed by an employer").

There is nothing in the language of the statute or its purpose that suggests Congress did not intend "employee," as separately enumerated, to describe the conventional master-servant relationship, especially given that employee is in the context of "agent" for which Congress drew directly on that term's common law roots.  See, *U.S. v. Rybicki*, 354 F.3d 124 (Cir. 2003).  Moreover, the government's stated concern that an instruction on "employee" that included the Darden factors would be confusing is simply a red herring. Criminal juries regularly must consider multiple elements of a given offense and that is no cause for confusion.  As many members of a given jury are themselves "employees" under its common law meaning, they are readily familiar with the indicia of control factors (hire, fire, supervision, specification of duties) and renumeration (employee benefits and tax treatment) that constitute the *Darden* test. There is simply no merit in the government's claim that a jury instruction consistent with the common law definition of "employee," the *Darden* factors, "would be invading the province of the jury by directly the jury as to what is relevant in making its factual determination[,]" (Doc. # 69, 9) no more than any instruction on the multiple elements that make up a criminal offense.

Additionally, application of the dictionary definition of employee utilized by this Court creates an inherent ambiguity between an "employee" and an "independent contractor" because both satisfy this limited definition. Ordinary people do not confuse the status of an employee with that of an independent contractor.  Due process requirements under the Fifth Amendment, as well as the related doctrine of the "rule of lenity," require the narrow construction of criminal laws where there is ambiguity. As the Supreme Court recently explained in *Skilling v. United*

*States*, 561 U.S. 358 (2010),[24] due process in the interpretation of criminal laws has two crucial components: the laws must be clearly written in order to provide fair warning to ordinary people as to what conduct is prohibited, and the laws must also be clear enough to reduce the danger of prosecutorial arbitrariness in the choice of targets. Id. 402-403 (noting these twin requirements of due process and relying on "rule of lenity" in the same vein); See also, *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "Under a long line of [US Supreme Court] decisions, the tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them. See *United States v. Gradwell*, 243 U.S. 476, 485 (1917); *McBoyle v. United States*, 283 U.S. 25, 27 (1931); *United States v. Bass*, 404 U.S. 336, 347-349, (1971)." *Skilling v. United States*, 561 U.S. at 401.

This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed.[25] It also places the weight of inertia upon the party that

---

[24] *Skilling* is notable for limiting the ability of a federal prosecutor to use the "honest services" law, *18 U.S.C. § 1346*, which prosecutors had previously employed broadly to address public and corporate corruption alike, to bribery and kickback schemes. The U.S. Supreme Court's (9-0) decision in *Skilling* and two other related cases released that same day "spoke to a broader sense that the federal corruption statutes were sorely in need of careful judicial review. . . . [M]any liberals and conservatives had found a rare point of agreement, cautioning that 'overcriminalization' by the federal government had become a serious problem." Justin Weitz, The Devil in the Details: 18 U.S.C. § 666 After Skilling v. United States, 14 N.Y.U. J. Legis. & Pub. Pol'y 805, 809-10 (2011). Critics have also targeted *18 U.S.C. §666*, "Theft or bribery concerning programs receiving Federal Funds, as "yet another weapon in the federal prosecutor's anticorruption arsenal. It may also prove to be the [U.S. Supreme] Court's next target." Id. p. 807.

[25] It thus should also not be without significance, with respect to the rule of lenity, that the federal anti-corruption mail and wire fraud statutes at issue in *Skilling* have historically recognized private-sector honest-services fraud, zeroing in on the common-law conventional use of "employee" and "employer:

can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *United States v. Santos*, 553 U.S. 507, 512 (2008)( because "profits" definition of "proceeds" is always more defendant-friendly than the "receipts" definition, the rule of lenity dictates that it should be adopted for federal money laundering statute). Application of this longstanding principle of criminal law thus counsels that the jury instruction here constituted error as it did not include those renumeration and indicia of control factors associated at common law with the term "employee."

A reviewing court examines de novo a properly preserved challenge to a jury instruction, reversing "where the charge, viewed as a whole, either failed to inform the jury adequately of the law or misled the jury about the correct legal rule." *United States v. White*, 552 F.3d 240, 246 (2d Cir. 2009) (internal quotation marks omitted)." *United States v. Binday*, 804 F.3d 558, 581-82 (2nd Cir. 2015).

**(3)** **Given that these "business documents" of the Town of Middlebury bear directly on the issue of whether the defendant, as MVFD Fire Chief, was a Town employee, did the trial court improperly exclude: (1) the proposed 2007 revisions to the Town Charter, rejected by the electorate, that would have created a Board of Fire Safety and Ambulance Commissioners with specific control over the MVFD Fire Chief as well as the inclusion of the MVFD Fire Chief as an Administrative Employee, which stands in sharp contrast to the Town Charter which is silent on the MVFD Fire Chief; and (2) those sections of two Town of Middlebury Board of Selectmen minutes concerning the Town Police Chief (hiring and disputes about proposed contract) the relevance of which is the inclusion of references to the Police Chief in the Town Charter that stand in sharp contrast to the silence of the Charter on the MVFD Fire Chief?**

---

When one tampers with [the employer-employee] relationship for the purpose of causing the employee to breach his duty [to his employer,] he in effect is de-frauding the employer of a lawful right. The actual deception that is practised is in the continued representation of the employee to the employer that he is honest and loyal to the employer's interests." *United States v. Procter & Gamble Co.*, 47 F.Supp. 676, 678 (Mass. 1942).

Shilling v. United States, 561 U.S. at 401.

**Applicable Legal Standard:**

A district court's evidentiary rulings are reviewed on appeal for abuse of discretion. *United States v. Fell*, 531 F.3d 197, 20-9 (2nd Cir. 2008)(quoting *United States v. Yousef*, 327 F.3d 56, 156 (2d Cir.2003)). An appellate court will not disturb the evidentiary rulings of a trial judge unless they are "manifestly erroneous." *In re Martin-Trigona*, 760 F.2d 1334, 1344 (2d Cir.1985) (quoting *Salem v. United States Lines Co*., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962)). "To find such abuse, we must conclude that the trial judge's evidentiary rulings were arbitrary and irrational." *United States v. Paulino*, 445 F.3d 211, 217 (2d Cir.2006) (internal quotation marks omitted). But a district court also abuses its discretion " when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision— though not necessarily the product of a legal error or a clearly erroneous factual finding— cannot be located within the range of permissible decisions." *United States v. Figueroa*, 548 F.3d 222, 226 (2d Cir.2008) (internal quotation marks omitted).

Even if a reviewing court finds error, a new trial is not required if the error was harmless. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). "An erroneous ruling on the admissibility of evidence is harmless if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury." *United States v. Jackson*, 301 F.3d 59, 65 (2d Cir.2002) (internal quotation marks omitted), abrogated on other grounds by *Chambers v. United States*, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009)." *United States v. White*, 692 F.3d 235, 244 (2nd Cir. 2.012)

**Legal Analysis:**

Although appellate review of evidentiary determinations is extremely deferential, see

e.g., *United States v. Malpeso*, 115 F.3d 155, 162 (2d Cir.1997), this Court incorrectly concluded

that the public document evidence proffered by Mr. Perrotti was not relevant to a fact of

consequence in the case. Intertwined with both his jurisdictional challenge and the jury

instruction issue, Mr. Perrotti also appeals this Court's granting the government's Motion to

Preclude certain evidence proffered by him, (Doc. # 73), that is the exclusion of certain sealed

and certified Town of Middlebury public records that have bearing on the absence of any

reference to the MVFD Fire Chief in the Town Charter.  There is no question that the public

documents are self-authenticating under Fed. R. Evid. 902 and thus require no extrinsic evidence

to be admitted. Each bears the raised seal of the Town of Middlebury and are certified under oath

by Brigette M. Bressete, the Assistant Town Clerk of the Town of Middlebury, "duly appointed

and qualified according to law, and having custody of the seal of said Town of Middlebury. Fed.

R. Evid. 1005 permits the use of these self authenticating public documents to prove the content

of an official record.

Evidence is relevant when "it has any tendency to make a fact more or less probable than

it would be without the evidence," Fed.R.Evid. 401, and, unless an exception applies, all

"[r]elevant evidence is admissible." Fed.R.Evid. 402. Under this "very low standard," *United

States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir.2008), this Court erred in precluding those

sections of two Town of Middlebury Board of Selectmen minutes concerning the Town Police

Chief (hiring and disputes about proposed contract)[26] the relevance of which is the inclusion of references to the Police Chief in the Town Charter that stand in sharp contrast to the silence of the Charter on the MVFD Fire Chief. When reflecting generically on issues of municipal public safety, the Chief of Police and Fire Chief come immediately to mind. It is thus relevant that the Town of Middlebury, through its Town Charter and ordinances,[27] establishes a Board of Police Commissioners with the authority to recommend a candidate as Chief of Police to the Board of Selectmen so long as that individual has the training and experience as specified in the position description on file with the Town Clerk. (Def.'s Ex. A, p. 8). The Town Charter and ordinance establish as a matter of law that the Chief of Police is a Town employee subject to all indicia of control (hire; fire for cause; duties specified in binding job description). The MVFD Fire Chief by contrast satisfies none of these legal prerequisites, raising the inference that he is not a Town employee and making these public documents legally relevant.

With respect to the proposed 2007 Charter revisions that would have added a Board of Fire Safety and Ambulance Commissioners with powers relevant to the MVFD Fire Chief as well as including for the first time the MVFD Fire Chief as an Administrative Employee, which the electorate overwhelmingly rejected,[28] the government challenged its admissibility under both

---

[26] In its Motion to Preclude, the government limited its argument as to those public documents referencing the Chief of Police to the issue of relevance.

[27] Of note, in addition to the Town Charter's inclusion of a Board of Police Commissioners, Chapter II, Section 202 (F), the Town of Middlebury also adopted an ordinance establishing Police Commission, "with all powers set forth in Section 7-276 of the General Statutes." Amendment: If any part of said ordinance section is declared invalid, it will not affect the validity of the rest of said ordinance. Passed at a Special Town Meeting January 25, 1973. Recorded Vol. 7, Page 237. Town of Middlebury Ordinances, pp. 21-22.

[28] In a letter to the Secretary of State, Election Division dated November 7, 2007, Edith Salisbury, the Middlebury Town Clerk certified, "[t]he results of the Charter Question on the November 6, 2007 ballot are as follows: 'Shall the proposed Charter revision for the Town of Middlebury as

Fed. R. Evid. 401 and 403. The 2007 proposed Charter revisions easily satisfy a threshold relevance inquiry[29] because their adoption by the electorate would have established Mr. Perrotti, in his capacity as MVFD Fire Chief, as a Town employee as a matter of law; their rejection by the electorate also has legal consequences with respect to the government's claim that Mr. Perrotti "was classified as an employee by the Town."(Doc. #68, p. 6 n.4). Mr. Perrotti submits that "because the chain of inferences leads a trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry. See, *United States v. Ravich*, 421 F.2d 1196, 1204 n. 10 (2d Cir.1970) (Friendly, J.) (rejecting common law 'inference upon inference' test and noting that drawn out inferential chains do not defeat relevance but subject challenged evidence to Rule 403 considerations)." *United States v. Quattrone*, 441 F.3d 153, 188 (2nd Cir. 2006).

Federal Rule of Evidence 403 provides that " [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." When confronted with a Rule 403 issue, " so long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir.2006). " *United States v. Al-Moayad*, 545 F.3d 139, 160-161 (2nd Cir. 2008).

---

approved by the Board of Selectmen on June 18, 2007 be approved?' YES: 832 NO: 1344 CHARTER WAS NOT APPROVED."

[29] The threshold relevance inquiry requires only that evidence have some tendency to make a fact of consequence "more or less probable than it would be without the evidence." Fed.R.Evid. 401.

"To avoid acting arbitrarily, the district court must make a 'conscientious assessment' of whether unfair prejudice substantially outweighs probative value." *United States v. Salameh*, 152 F.3d 88, 110 (2d Cir.1998) (per curiam) (quoting *United States v. Birney*, 686 F.2d 102, 106 (2d Cir.1982)). *United States v. Al-Moayad*, 545 F.3d 139, 160 (2nd Cir. 2008). Mr. Perrotti contends that the "excluded evidence spoke directly to a critical element of the Government's case and its exclusion prevented [him] from presenting a complete defense. See *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir.2000) (noting that in assessing harmlessness it is important to consider whether the error " bore 'on an issue that [was] plainly critical to the jury's decision' " (quoting *Hynes v. Coughlin*, 79 F.3d 285, 291 (2d Cir.1996)))." *United States v. White*, 692 F.3d 235, 251-252 (2nd Cir. 2012).  The government deliberately limited its "burden of proving that Mr. Perrotti was an agent by presenting evidence that he performed certain functions in his capacity as a Town employee and, in fact, was classified as an employee by the Town." (Doc. #69, p.6 n.4).  The proposed 2007 Charter revisions compared to the Town Charter in evidence are not confusing nor are they misleading  The proposed 2007 Charter revisions, which would have classified the MVFD Fire Chief as a Town employee subject to control, but were rejected by the electorate, bear directly on the government's claim on the first element of the offenses charged.  This Court's preclusion of such public documents, when employment by the Town is the only vehicle by which the government can satisfy its burden of proof as to the first element of the crime charged, cannot and does not constitute harmless error.

**(C)     This appeal raises "a substantial question of law or fact likely to result in reversal or an order for a new trial."**

The Second Circuit does not require that *18 U.S.C. §3143(b)(B)* be taken to condition bail upon this Court predicting the probability of its own reversal. *United States v. Randell*, 761

F.2d 122, 124 (2nd Cir. 1985), *cert. denied*, 474 U.S. 1008 (1985).[30]  This Court must first

determine whether the question on appeal is substantial, which the Second Circuit has

determined "is more than 'frivolous'" and "'is a close question or one that very well could be

decided the other way.'" *United States v. Randell*, 761 F.2d  at 125 (quoting *United States v.*

*Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)) (internal quotation marks omitted).  If this Court

determines the questions on appeal are substantial,[31] it must "must then consider whether that

question is 'so integral to the merits of the conviction on which defendant is to be imprisoned

that a contrary appellate holding is likely to require reversal of the conviction or a new trial.'" Id.

(quoting *Miller*, 753 F.2d at 23).  "Put differently, the appeal must raise a substantial question

that, if decided in defendant's favor, will likely result in a reversal or order for a new trial as to all

---

[30] "Like the other circuits that have considered this issue, we believe that such a construction does not fairly reflect congressional intent. See *United States v. Giancola*, 754 F.2d 898, 900-01 (11th Cir.1985); *United States v. Handy*, 753 F.2d 1487, 1489 (9th Cir.1985); *United States v. Miller*, 753 F.2d 19, 23-24 (3d Cir.1985). To define "substantial" questions as those "likely to result in reversal or an order for a new trial" not only renders superfluous the word "substantial"--since an insubstantial question will hardly result in reversal--but presumes that district courts will consciously leave "substantial" errors uncorrected. We agree with the court in *Miller* that the phrase "likely to result in reversal or an order for a new trial" cannot reasonably be construed to require the district court to predict the probability of reversal. . . . Instead, the language must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal." *United States v. Randell*, 761 F.2d at 125.
[31] Compare, *United States v. Gladney*, No. 3:09cr117(MRK), 2011 WL 381561, at *3 (D. Conn. Feb. 2, 2011) (defendant's motion does not show the existence of a substantial question of law or fact under 18 U.S.C. § 3143(b); request for stay denied); *United States v. Corrigan*, 3 07cr2 (JBA) August 3, 2007 (because "the denial of a defendant's request for discretionary downward departure is generally not appealable . . . [a]bsent clear evidence of a substantial risk that the judge misapprehended the scope of his [or her] departure authority," see *United States v. McDaniel*, 175 Fed. Appx. 456, 458 (2d Cir. 2006), which is not likely to be found in this case because the Court recognized its authority to downwardly depart on the basis of extraordinary community contributions, request for stay denied given Supreme Court's recent holding in *Rita v. United States*, 127 S.Ct. 2456 (June 21, 2007), that sentences within the applicable guidelines range are presumptively reasonable).

counts for which a defendant has been sentenced to prison." *United States v. Randell*, 761 F.2d at 126.

There can be no question that the issues on appeal strike at the core of the first element of the offense for which the government had the burden of proof. Employees typically earn hourly wages or a salary; the average person does not associate the use of the term "stipend" with employment as that term is conventionally understood – "the master-servant relationship." The Town of Middlebury's deliberative use of "stipend" in association with Mr. Perrotti is telling. Among the jury requests to this Court was a question seeking the definition of "stipend" in accordance with the State of Connecticut Labor Laws" that this Court declined to answer.[32] (Court's Ex. #2, dated July 17, 2015). That jury note counsels that the jury initially had at least some disagreement on the first element of the offenses charged, that is "agent" as "employee." Its focus on "stipend" in the context of Connecticut's labor laws further suggests that jury was confused because "employee" was not given its ordinary, common law meaning in the jury instructions.

The first impression issues in his appeal raise also the specter of whether Mr. Perrotti's indictment under §666(a)(1) provides an example of the constitutional line in the sand where the seemingly limitless scope of §666's reach exceeds its stated legislative purpose, preventing corruption in federally funded programs by non-federal employees. See, e .g. Justin Weitz, The Devil is in the Details: 18 U.S.C. §666 After *Skilling v. United States*, 14 N.Y.U. J. Legis. & Pub. Pol'y 805 (2011); Daniel N. Rosenstein, Section 666: The Beast in the Federal Criminal Arsenal, 39 Cath. U. L. Rev. 673 (1990); Rohit D. Nath, Corruption Clarified: Defining the

---

[32] The jury also sent a later not to the court stating that "[w]e cannot agree on all the elements." (Court's Ex. # 6 dated July 22, 2015).

Reach of "Agent" in 18 U.S.C. § 666 , 80 U. Chi. L. Rev. (1391); Stephanie G. VanHorn,

Taming the Beast: Why Court Should Not Interpret 18 U.S.C. § 666 to Criminalize Gratutities,

119 Penn St. L. Rev. 1(2015); Cheryl Crumpton Herring, 18 U.S.C § 666: Is It a Blank Check to

Federal Authorities Prosecuting State and Local Corruption?, 52:4 Ala. L. Rev. 1317 (Summer

2003). Moreover, even under a broad reading of 18 U.S.C. §666(a)(1), the United States

Attorneys' Manual (USAM), in discussing that statute's scope states that "[t]he advisability of a

Federal prosecution under 18 U.S.C. § 666(a)(1)(A) should be carefully weighed against the

likelihood that State prosecution will be sufficient to protect Federal interests." USAM, Title IX

– Criminal, Section 1001.

      Mr. Perrotti's appeal thus satisfies the substantial question standard, also defined as a

legal or factual issue "which is either novel, which has not been decided by controlling

precedent, or which is fairly doubtful." *United States v. Randell*, 761 F.2d at 125(quoting *United

States v. Miller*, 753 F.2d 19, 23 (3rd Cir.1985)). If Mr. Perrotti is successful in his appeal, it

could result in a remand for another trial wih a new jury instruction including the *Darden* test

and the admissibility of the 2007 proposed Charter revisions and other public documents

exposing the disparate treatment by the Town Charter of the Chief of Police and the MVFD Fire

Chief, or a dismissal for lack of jurisdiction. *Id*. Such outcomes satisfy the *substantial question*

requirement as it meets the criteria of 18 U.S. Code, Section 3143(b)(1)(A).

### (III)   Implications of Time Element

      Another calculus for this Court is a comparison between Mr. Perrotti's sentence and the

median time from notice of appeal to final disposition in the Second Circuit. Because Mr.

Perrotti's sentence only calls for three months imprisonment, he will have already served his

term of incarceration before his appeal will be heard. The most recent statistics available reveal that the median time from notice of appeal to final disposition is in the Second Circuit is 14.0 months. http://www.ca2.uscourts.gov/circuit_executive/Reports/09/Statistics.pdf. It is thus clear that Mr. Perrotti's appeal would not be heard by the Second Circuit before January 28, 2016, the anticipated date of his release.

Because Mr. Perrotti's convictions on two counts of theft under *18 U.S. Code §666(a)(*1) impact his reputation and character, it would be unjust for his appeal not to be fully heard. If he is not granted bond pending appeal, then his appeal in essence becomes moot before it can even be heard. That would be manifestly unfair to Mr. Perrotti, his family and those members of the community who continue to believe in his good works while volunteer Fire Chief for more than seventeen years.

**(IV)   Conclusion**

"It is the defendant's burden to rebut the presumption in favor of detention by clear and convincing evidence. See *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (in the post-verdict, pre-sentencing context). If a defendant meets this substantial burden, bail pending appeal is mandatory. See Id. (quoting 18 U.S.C. § 3143(a) for the post-verdict, pre-sentencing context, but the mandatory language in 18 U.S.C. § 3143(b) for the post-sentencing context is identical)." *United States v. Sheldon Silver*, 15-CR-093 (VEC). Mr. Perrotti submits that he has met that burden.

WHEREFORE, Mr. Perrotti respectfully requests that the Court grant this MOTION

FOR BOND PENDING APPEAL.

THE DEFENDANT, PAUL PERROTTI

By: Martin Minnella /s/ #ct038195
Martin Minnella
Minnella, Tramuta & Edwards LLC
40 Middlebury Road
Middlebury, CT 06762
Phone No. (203) 573-1411
Facsimile No.: (203) 757-9313
Email Address: johannas@mtelawfirm.com
Federal Bar No.: ct038195

And

By: Lori A. Welch-Rubin /s/ #ct09866
Lori A. Welch, LLC
37 Northrop Road Extension
Bethany, Connecticut 06524
(203) 314-8708
(203) 865-5444 (fax)
lwelchrubin@gmail.com
Federal Bar # ct09866

**ORDER**

The foregoing motion having been heard is hereby:

GRANTED        /        DENIED

_____
Judge / Clerk

**UNITED STATES DISTRICT COURT**
**DISTRICT OF  CONNECTICUT**


UNITED STATES OF AMERICA : 

                                              :

V. : NO. 3:14cr-00215-(JAM)

                                              :

PAUL PEROTTI : October 20, 2016


**CERTIFICATE OF SERVICE**

     I, Martin Minnella, hereby certify that on October 20, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


                                     /s/ Bar #  ct038195
                                     Martin Minnella
                                     Federal Bar No.: ct038195